The Court having taken time for advisement, their opinion was, at an after-day in the term, delivered as follows, by
Parsons, C. J.
The defendants move for a new trial on two grounds. 1. Because the judge admitted the bond declared on to go in evidence to the jury, when there was no evidence that the sureties had been approved by two justices of the peace quorum unus.
2. Because the evidence in the cause did not prove that Willis had committed an escape within the true intent of the condition of the bond.
The direction of the statute that the sureties should be approved by two justices is given to prevent oppression in the creditor by his refusing the bond, when the sureties are sufficient. If, therefore, he does not allege the insufficiency of the sureties, but is satisfied with them, and agrees to take the bond, the intent of the statute is complied with, and there is no necessity for the approbation of the sureties by the justices, to entitle the debtor to the privileges and liberty granted by the statute, or to indemnify the sheriff for allowing them. The debtor’s not obtaining this approbation clearly cannot be given in evidence under the plea of non est factum. But if it could have availed the defendants by specially pleading it, we should have been willing to have granted a new trial, with liberty for the defendants to plead it; but we are all satisfied [ * 101 ] that the objection, in whatever form it * might have been made, could not have prevailed, and that a new trial on this ground ought not to be granted.
To support the motion on the second ground, the defendant insists that the yard appurtenant to the jail is a part of the prison ; that while the debtor remains in any part of the prison, he does not commit any escape; that at common law the sheriff might allow the debtor the liberty of the yard at all times ; that the statute does not restrict the power which the sheriff before had, but is only mandatory; and that it appears from the report of the judge that the prisoner was not without the jail-yard. From these premises they conclude that no escape within the condition of the bond has been committed.
*87 If these premises are correct, the conclusion seems to be just.
At common law, the sheriff had power to appoint his own prison in any part of his county, in which he might confine debtors in execution. The intention of imprisonment for debt is, that the creditor may hold the body of his debtor as a pledge for the payment of the debt. The value of this pledge must depend on the ability and inclination of the debtor to pay. If he is not able, it is worth nothing, and after the expiration of thirty days, two justices of the peace, each being of the quorum, may, on his application, discharge him from his imprisonment. If he has ability to pay, he is to be restrained of his liberty, until he is willing to satisfy his creditor. And for this purpose the law obliges the sheriff to keep him in salvo et arcta custodia until he pay the debt. And that he may be safely and closely kept, he must be confined in some nouse appropriated by the sheriff for his prison for debtors in execution. And it is a rule of law that a prisoner, who is in execution for debt, ought not to be suffered to go at large or at his liberty, neither within the prison, nor without the prison (14). And to suffer a prisoner to have greater liberty than the law allows, is an escape (15). The escape is committed by being out of the lega, custody of the sheriff; and if the debtor has a liberty inconsistent with '* that custody, he cannot be said to [ * 102 _ remain in legal custody. These observations are confined to sheriffs, who have the appointment of their own jails for debtors in execution. For if these sheriffs could lawfully make not only any house, but any lands of their own, a prison for debtors, and could give the debtors the liberty of all those lands, the design of the imprisonment, to compel a wealthy debtor to pay his debt, would be in a great measure defeated. A lord of an extensive manor might be made a sheriff, and he might make the whole manor his prison for debtors, taking bonds from them to continue true prisoners within his prison.
The defendants’ counsel have cited some cases respecting escapes from the Marshalsea and Fleet prisons. These prisons come under a different consideration. They are not the prisons of the sheriffs; they are kept by the marshal and warden, and may be located by the rules of the courts to which they respectively belong. By these rules lands and houses adjoining to these prisons are made a part of them, so far that debtors in execution may be in lawful custody within the rules; and it is no escape, unless they go without tire rules. This liberty arose from the prisoners being so numerous *88 (hat the house would not hold them (16). But it is still in the power of the court, to which the prison belongs, to restrain any debtor from the liberty of the rules. And if, after such restraint, the debtor have the liberty of the rules, it will be an escape (17)
The common law upon this subject has been in some respects altered by our statutes. Here the Court of General Sessions of the Peace can alone erect and maintain jails; and they have the power of locating them, so that they are placed within the towns in which the courts are by law holden. Besides the jail-house, the Sessions may erect houses or apartments belonging to the prisons, and may fix the boundaries of the yard appertaining to the jail; and these houses and apartments, together with the yard, may be considered as part of the prison. The sheriff has the custody of the jail, and of all the prisoners lawfully committed. The county are answerable to him for any escape of a debtor [ * 103 ] through #the insufficiency of the jail, for which he has been holden liable to the creditor.
Neither the Sessions, nor any other court, nor the sheriff, can alter the nature of that custody, in which he is obliged by the common law to keep debtors committed to him in execution. This custody must be safe and close, and the debtor must be confined, not only within the prison, but within the jail-house. This imprisonment, required by the common law, was supposed to be, in certain cases, unnecessarily rigorous; and the legislature, by the provincial statute of 4 G. 2, c. 1, interposed for the relief of debtors. The provisions of that statute, long since expired, have been substantially reenacted by the statute of 1784, c. 41, only substituting for the obligee the creditor in the place of the sheriff.
By this statute any prisoner for debt shall be allowed to have a chamber and lodgings in any of the houses or apartments belonging to the prison, and liberty of the yard ivithin the same in the day time, but not to pass without the limits of the prison, upon payment of reasonable chamber rent. Provided he give bond with sufficient surety or sureties to the creditor in double the sum for which he was imprisoned, conditioned that, from the time of executing such bond, he will continue a true prisoner in the custody of the jailer, and within the limits of the prison, until he be lawfully discharged, without committing any manner of escape.
From the language of this statute it is manifest that the legislature intended to give the debtor a privilege he could not before legally enjoy. It is not mandatory to the sheriff to grant indulgences to debtors, which he might have granted at his pleasure *89 but it vests in the debtor a right which the sheriff is obliged to allow. If, before the statute, the sheriff might have allowed to debtors chambers in the apartments belonging to the jail, and the liberty of the yard at all times, he might have taken bonds from them, to indemnify him against their escape, if the intention of the bond was bona fide to secure their imprisonment (18). And if t ere was an escape, the debtor would only be obliged to pay the sheriff the debt, and the costs he had expended. The statute was * therefore quite unnecessary, unless it be [*104] improperly supposed that the sheriff would refuse a reasonable indemnity, which the debtor now can more conveniently secure to him than by stipulating to pay the creditor double the debt according to the terms of the statute.
This reasoning is confirmed by referring to some former statutes on this subject. By the provincial statute 4 G. 2, a prisoner for debt was to be allowed the liberty of the yard at all times, on his giving bond to the sheriff for his keeping within the limits of it; and if there was an escape, the sheriff was protected against an action by assigning the bond to the creditor, who might thereupon have judgment for his debt. According to the argument of the defendants’ counsel, this statute was merely mandatory, the sheriff having a discretionary power to make the same allowance, on receiving the same indemnity. And yet, by the provincial statute of 7 & 8 G. 2, the provision of this statute was considered as encouraging escapes; to prevent which more effectually, the creditor was enabled to recover on his bond double his debt. Improvident must be the conduct of that legislature to revoke its mandate to the ' sheriff, because obedience to it encouraged escapes, and at the same time to leave with him a discretionary power, the exercise of which must produce the same mischief.
This reasoning is further supported by the construction of the statute, which authorized the giving of the bond declared on. By the eighth section it is manifest that prisoners for debt are to be received and lodged in apartments in the prison separate from felons and must there be confined until they have given the bond required in the ninth section. On giving that bond, they may have a chamber and lodging in other apartments belonging to the prison, paying for - them; and also the liberty of the yard in the day time within the prison. To prevent the excess of this liberty, the bond is the creditor’s security; and if the debtor takes a liberty not authorized by the statute, he does not remain a true prisoner in the custody of the jailer. Upon the defendants’ construction, the condition of the *90 bond allows further liberty than is expressly given by the [ *105 ] statute; which * cannot be admitted consistently with the manifest intent of the legislature.
We are, therefore, all of opinion that, upon principles of the common law, and upon the construction of our own statutes, if a prisoner for debt, having given a bond to obtain an easement from close imprisonment, be found in the night time voluntarily without any apartment in, or belonging to the prison, and in the yard appurtenant to the jail, it is an escape within the true intent of the condition of the bond.
In forming this opinion, we have endeavored to keep our minds uninfluenced by legal precedents. But in fact the present question is not a new one in our courts. In the case of Pond &f Metcalf, in Norfolk, A. D. 1802, where the escape alleged was the debtor’s lodging part of a night in a barn within the boundaries of the jail-yard, the court held that it clearly was an escape, and would not suffer the point to be argued, and declared that it had been frequently adjudged that, if the debtor was in the jail-yard in the night time, it was an escape, and a breach of the condition of his bond. Many other cases are also recollected, in which the same decision was had; and to give judgment in this case for the defendants would contradict other judgments of this Court heretofore rendered, and which were acquiesced in by the parties; and destroy the authority of precedents arising from former judicial decisions.
The case of Heard vs. Baldwin, in Middlesex, has been mentioned as recognizing a different principle. In that case the debtor had given bond to obtain the liberty of the yard in the day time, and in consequence thereof had been indulged with that liberty. On examining the bond, it appeared not to pursue the statute, and of course it would not justify the sheriff in granting that indulgence; but it was holden that, as the debtor had not exceeded the liberty allowed by the statute, it was no escape. If that case be law, it does not militate with the present judgment, for the debtor was not within the yard and without any apartment in the prison in the night time. But we all exceedingly doubt whether that case is law; for a bond not pursuing the statute must be considered as [*106] no bond, and the indulgence of the sheriff was * therefore not authorized by the statute, and was a liberty, to which the debtor was not by law entitled (19).
Judgment according to verdict.
05” After the opinion of the Court was thus delivered, the *91 plaintiff moved that interest should be added to the penalty of the bond, from the breach of the condition to the day of entering up judgment. The motion was overruled, and judgment ordered to be entered for the penalty of the bond and costs.

 Dalt. Sher. 485

 Imv. Sher. 224

 1 Lev. 254.

 Noy. Rep. 38.—1 Bulstrode, 145.

 1 Saund. 161.—1 Lev. 254.

 [Vide ante, page 89, note.—Ed ]