### JOHN TAPPAN *versus* THOMAS BELLOWS.

If the sheriff permit a prisoner for debt to have the liberty of the yard, upon his giving bond, with two sureties, and the sureties are in fact sufficient, it is not an escape, although the sureties have not been approved by the creditor, nor by two magistrates.
Both the magistrates must actually approve the sureties, and must be together at the time—otherwise their certificate is of no avail.

THIS was an action of debt, against the sheriff of this county, for three several escapes of one *Porter Lumas,* who had been committed to gaol in this county upon three several executions at the suit of the plaintiff. The declaration contained three counts.

The cause was submitted to the opinion of the court upon a statement of facts, in which it was agreed that *Lumas* was committed in the manner alleged in the several counts; that, upon each of the executions upon which he was committed, he gave bond in every respect conformable to the requisitions of the statute for the ease and relief of persons imprisoned for debt, except in the manner in which the sureties had been

approved ; that the sureties in each of the bonds were in fact insufficient, but had never been approved by the plaintiff : that the sureties in the bond given on the execution mentioned in the first count were approved by two competent magistrates, but the magistrates were not together when they approved them ; that the sureties in the bonds given on the executions mentioned in the second and third counts were approved only by one magistrate, who made a certificate that they were sufficient, to which he put his own name and that of another competent magistrate : that neither the sheriff, nor his deputy to whose custody *Lumas* was committed, had any knowledge of the manner in which the sureties had been approved ; and *Lumas*, upon said bonds being given, and the sureties approved as aforesaid, was permitted to have the liberty of the gaol yard.

*G. B. Upham*, for the plaintiff.

*J. C. Chamberlain*, for the defendant.

The opinion of the court was delivered by

RICHARDSON, C. J. It is not contended that this action could have been maintained, had the sureties in the bonds been duly approved. But admitting they were not duly approved, and in fact that they were not approved at all, it is very apparent that the plaintiff can have sustained no possible injury on that account. For if the debtor continued a true prisoner within the limits of the prison, the object which the bonds were intended to secure has been fully obtained. If the prisoner did not continue within the limits, but escaped, the plaintiff has now his remedy upon the bonds, to recover his debt and ten per cent. interest, from the time of commitment ; and it is admitted that the sureties are able to pay.

The plaintiff, then, demands of the sheriff the debts for which *Lumas* was committed, not on the ground that any act or omission of the sheriff has been injurious to him, but on the ground that the bitter letter of the statute, read according to his own sense, gives him those debts. His claim rests altogether on strict rigid law. Notwithstanding this,

Tappan
*vs.*
Bellows.

if his claim be well founded in law, it must be allowed. But in a case of this kind we ought to be satisfied that the statute, construed according to its clear and obvious intent and object, is in his favor, before we sustain his action.

The statute upon which the question in this case arises, is entitled "An act for the ease and relief of persons imprisoned for debt"; and provides that any person imprisoned for debt, &c. shall be permitted and allowed to have a chamber, &c., such prisoner giving bond to the creditor, with two sufficient sureties, being freeholders in this state, to be bound jointly and severally, in double the sum for which such prisoner is imprisoned, with a condition in the form prescribed by the statute.

It may be well to consider, in the first place, what construction must have been given to the statute, had it stopped here. It is clear that upon procuring a bond in all respects conformable to the requisitions of the statute, the debtor would have been entitled to the privilege, whether the creditor consented or not; and it would have been the duty of the gaoler, and he might have been compelled, to allow it. But as a bond conformable to the statute would have been the only foundation of the debtor's claim to the privilege, if the bond had been defective in any particular required by the statute, the debtor would not have been entitled to the privilege; and, if the gaoler had in such case allowed it, he would have been guilty of suffering an escape. Hence it is evident that the gaoler must at his peril have judged of the sufficiency of the bond.

The bond must have been accurate in the following particulars, to have answered the requisitions of the statute.

1. It must have been given to the creditor as the obligee.

2. It must have been executed by the debtor and two sureties.

3. The sureties must have been freeholders in this state.

4. The sureties must have been sufficient.

5. The debtor and sureties must have been bound jointly and severally.

6. They must have been bound in double the sum for which the debtor was imprisoned.

7. The bond must have had a condition in the form prescribed by the statute.

It is apparent that there could have been no difficulty in determining whether the bond was defective in any of these particulars, except the sufficiency of the sureties. As many individuals who are apparently in good circumstances are not in fact so, it might have been a hardship upon the gaoler to decide in every case at his own peril upon the sufficiency of the sureties who might be offered.

It would have been of no consequence to the creditor whether the gaoler decided right or wrong; because, if the sureties were in fact sufficient, he would have been safe in case an escape of the debtor took place; and if the gaoler granted the privilege when the sureties were not sufficient, that would have been an escape, and the creditor would have been instantly entitled to recover his debt of the sheriff. So that the creditor's security required no further provisions in the statute. But the gaoler's security did require further provisions; and it was accordingly provided that if the sureties be not approved by the creditor, &c., then any two justices, &c., approving thereof, and certifying such their approbation on the back of said bond, shall be deemed sufficient. It is very evident that this clause in the statutes relates only to the sufficiency of the sureties, and leaves the gaoler still to judge at his peril of the sufficiency of the bond in other respects. If the justices certify that the sureties are sufficient, their certificate will forever preclude the creditor from denying their sufficiency; but no certificate can preclude him from denying the sufficiency of the bond in other respects. If the creditor agree to accept the sureties, he will be forever estopped to deny their sufficiency, although the bond be not approved by the magistrates; and upon such agreement he would have been estopped in the same manner had the clause of the statute now under consideration been omitted.

The operation of this clause in the act can in no case be of any advantage to the creditor, but may in some cases be injurious to him. It has been before shewn, that without this clause he would have been secure at all events ; but now, in case the sureties approved by the magistrates should turn out to be insolvent, the creditor would be estopped from shewing it, and might lose his debt. But this provision is for the benefit of the gaoler, because it renders him safe at all events, if he choose to avail himself of it.

We come, then, to the question, Is the certificate of the justices essential under the statute in every case where the sureties have not been approved by the creditor ? If such certificate be essential, it must be either,

1. Because the plain letter or manifest intent of the statute has made it so—or,

2. Because the security of the creditor requires us to put such construction upon the statute as shall make it so.

It will hardly be contended that the plain letter of the statute makes the certificate essential. It is declared that, a certificate being made, the sureties shall be esteemed sufficient ; but it certainly is not declared, that in case there is no certificate they shall be deemed insufficient.

Nor is there any expression in the statute which shews it to have been the intent of the makers of it, that a certificate should be essential.

It is declared " that the sheriff or gaol-keeper shall not " be liable to any action for any escape of such prisoner " after the executing of such bond." It is said, " such bond", here means a bond for sureties duly approved ; that it is tantamount to saying, " after the executing of such bond as aforesaid, with sureties approved as aforesaid." But is such the manifest intent of the statute ? The making and executing of such bond as the statute intended is one thing—the justices' approbation of the sureties is another. " After the executing of such bond." What bond ? The answer is obvious : such bond as the statute had before pre-scribed. Surely the bond may be such as the statute intend-

Tappan
*vs.*
Bellows.

ed, although the sureties have never been approved by the justices, or the creditor ; that is, it may be in the form prescribed, and the sureties may be sufficient.

It is not doubted, that if it were necessary, in order to effect the objects of the makers of the law, to construe the words " such bond" to mean a bond with sureties approved, they might be so construed. All we mean to say now, is, that such is not the plain and obvious intent of the statute.

Nor does the security of the creditor require us so to construe the act as to make such certificate essential.

It has been before shewn, that he is safer when there is no certificate, than when one has been procured.

The certificate does not make the sureties more able to pay. The bond is no better, nay it is worse, because if the sureties have been approved, their sufficiency is at his risk. But it may be said, that if we hold the certificate of the magistrate always essential, the sureties will in all cases be sufficient. But is this certain ? How much such a certificate is considered among magistrates to be a matter of form, this case clearly shews. If they mistake, they are not liable.

No provision is made to notify the creditor to shew cause why the certificate should not be granted. Nor is the creditor usually present. The sureties would be more likely to prove sufficient, if the gaoler took them at his own risk. He would have strong motives of interest to reject insufficient sureties.

It is said that the creditor ought not to be compelled to take the sheriff as surety for the sufficiency of the bondsmen. But what better security has the creditor for the safe keeping of his debtor, in case the debtor remains in close custody without bond, than the sheriff. The gaoler may, when he pleases, suffer the debtor to escape. And he is as likely to let the debtor escape without bond as he is to grant him the liberty of the yard with sureties whom he knows to be in-

Tappan
*vs.*
Bellows.

sufficient. The consequences to him are the same in the one case as in the other.

It is contended that it will in some cases be inconvenient and hazardous to a creditor to determine whether the bondsmen are sufficient or not. But will it be more convenient to the creditor to have the question already settled that they are sufficient, and to be confined to his remedy on the bond, whether the sureties are sufficient or not? Will it be more convenient to him to have the question settled against him without being heard, than to investigate the question himself, make up his own judgment as to what course will be most for his interest, and to be at liberty to pursue such remedy as the facts in his case will afford him? It is also urged, that if the sureties be not approved, the bond is only good at common law, but is not within the statute, and so the creditor will lose his ten per cent. It has been otherwise settled, and in a manner perfectly satisfactory in the case of *Bartlett* vs. *Wallis & al.* 3 *Mass. Rep.* 86.

It may be said that the creditor in resorting to the remedy against the sheriff in case the sureties be insufficient, must lose his ten per cent. ; and so he must if the gaoler let the debtor go at large without any bond whatever.

The history of the law on this subject furnishes no argument in favor of the plaintiff in this case. Our statute was copied originally from the *Mass.* Provincial act of 22 *Geo.* 2, *cap.* 231. *Col. & Prov. Laws* 564. The bond required by that act was in all things similar to the bond required by our present statute, except that it was given to the sheriff as obligee, who in case of a breach of the condition was to assign it to the creditor ; and it was expressly provided " that the sureties be approved as sufficient by the justices," &c., and no other security to be accepted. Our statute of June 21, 1782, (see *Melcher's* edition of the Laws 60,)was copied nearly verbatim from the Provincial act of *Massachusetts*, and it was there provided, that " such sureties be approved " as sufficient by the court," &c., " and no other security " shall be accepted in such cases." Our present statute is

copied from the statute of 1782. The form of the bond is the same in both statutes ; but the present statute requires it to be given to the creditor as the obligee. The proviso in the former statute, which declared expressly that no other surety than such as had been approved, should be accepted, is entirely omitted in our present statute, and in lieu of it it is only said, that being approved they " shall be deemed sufficient." This omission of an express provision, and the adoption of a provision by no means directly implying the same thing, furnish a strong presumption that the makers of our present statute intended to alter the law on this subject.

The provision of our statute, and the statute of *Massachusetts* on this subject, are a strange departure from the rules of the common law. In *England* and in *New-York* a debtor has the liberty of the yard, nearly in the same manner that he is let out on bail in mesne process. 2 *Durn. & East, Bonafous* vs. *Walker* 126.—6 *Johnson* 121, *Peters* vs. *Henry.*—5 *Johnson* 89, *Bissel* vs. *Kipp.*—4 *Johnson* 45, *Tillman* vs. *Lansing.* There the sheriff may grant the liberty without any security, if he see fit, and is not liable if the debtor continue a true prisoner within the limits. But here a sheriff may let a debtor, who is in prison upon mesne process, go at large where he pleases, upon bail who are altogether insufficient ; and it is no escape, nor can he ever be liable, if the condition of the bail-bond be fulfilled. But if he were to grant the same debtor only the liberty of the yard, upon insufficient sureties, it would be an escape, although the debtor continued a true prisoner within the limits. To find a good reason for such a distinction would probably be no very easy task. But we must take our statutes as we find them. It is our business to administer, not to make, laws. The best way of construing statutes, however, is said to be by the rules of the common law in like cases. 10 *Mod.* 245. If, then, the common law in the analogous case of bail, did not require the sureties to be approved, this statute ought not to be so construed as to make it essential, unless the plain and obvious meaning of the statute make such construction necessary.

Tappan
*vs.*
Bellows.

Nor is the rule and reason of the common law in the case of bail, the less applicable to this case because the bond here is to be to the creditor as obligee. The sheriff judges of its sufficiency at the same risk and under the same liabilities as if it were taken to himself. The obvious reason of changing it from the sheriff, to whom it was given by the old statute, to the creditor, was to save the trouble of an assignment.

The whole amount of the argument in favor of the plaintiff in this case is this, that the statute has declared what sureties shall be deemed sufficient, and therefore none others ought to be deemed so. But the statute does not declare that no others shall be deemed sufficient : nor does its obvious and clear intent seem to be that no other should be deemed sufficient ; and it has been shewn that such a construction is in no way necessary to the security of the creditor.

But how will such a construction affect the sheriff ? In order to answer this question properly, it will be necessary to determine what certificate of the magistrates will, and what will not, protect the sheriff.

1. A certificate never signed by the magistrate, but forged, would be a mere nullity, and would not protect the sheriff.

2. A certificate made and signed by one in the name of both would be a mere nullity.

3. If it should turn out that one of the magistrates was interested, the certificate would be a mere nullity. *5 Cranch* 363, *Slocum* vs. *Simms & al.*

4. It would also seem that if the approbation were not the joint act of the magistrates, that is, if they were not together when they made the certificate, it would be invalid. It is the duty of the magistrate to enquire, and judge of the sufficiency of the sureties. Their determination is conclusive against the creditor upon the sufficiency of the sureties. Their duty is strictly judicial. It has long been settled, that when a judicial act is required to be done by two justices,

they must both be present.  6 *Mod. Rep.* 180, *Regina* vs.
*West.*—*Bacon Ab.* " *Justices*" *E.* 5.—8 *Johnson* 325.

5. If it should turn out that the justices approving the
bond were not duly qualified, or that their commissions had
expired, the certificate would be a mere nullity.

Now the action in this case is founded upon the principle
that certificates, defective upon any of these grounds, are no
protection to the sheriff, and the principle is without doubt
correct.  The creditor is not estopped to shew the insuffi-
ciency of the sureties by any certificate but such as the
statute intended.

To determine, then, that the sheriff shall be responsible
for the regularity of the certificate, even in cases where the
sureties are sufficient, is throwing an unnecessary responsi-
bility upon that officer ; is to construe what was intended for
his advantage, to his prejudice ; is to crush him with the very
shield which the law has given him for his protection.  In-
deed, it may be questioned if it would not be safer for the
sheriff to be responsible for the sufficiency of the sureties
in all cases, than to be responsible for the regularity of the
certificate in every case.  It would often be easier to decide
upon the sufficiency of the sureties, than upon the regularity
of the certificates.

The true construction, then, of the statute is, that the
sheriff is liable for an escape.

1. In case the bond be not substantially in the form pre-
scribed by the statute.

2. In case the sureties be insufficient, unless they have
been approved by the creditor, or by two magistrates, as pre-
scribed by the statute.

But if the bond be in the form prescribed, and the sure-
ties sufficient, he is in no case liable.

The provision relative to the approbation of the sureties,
was intended for the protection of the sheriff, and he is not
compelled to grant the privilege unless the bond has been
approved by the creditor or the justices ; but he may if he
pleases.

This construction is neither against the letter nor obvious intent of the statute; is not inconsistent with the perfect security of the creditor; defeats no object the makers of the statute could have had in view, and is most manifestly required by a due and proper regard to the safety of the sheriff.

*Judgment for the defendant.*