## COFFIN *vs.* HERRICK.

Whether a bond given to procure the liberties of the jail limits pursuant to the provisions of the fourth section of the act of 1822, *ch.* 209, *approved* by but *one* justice of the peace and of the *quorum*, be sufficient to justify the prison keeper in releasing the debtor — *quære.*

But the prison keeper would be justified in releasing the debtor on the giving of such bond, though it were defective, if *accepted* and *approved* by the *creditor.*

Such approval may be *express* or *implied;* — or *before* or *after,* the discharge of the debtor.

And where the creditor wrote to one of the obligors in the bond, who was a surety, as follows : " By the statute one year only is given to commence an " action [on the bond] and as that time has nearly expired, I write at this time " to give an opportunity to settle the same if you think advisable ;" — it was construed to be *an acceptance* of the bond.

THIS was an action of *debt for an escape,* against the defendant, as sheriff of the county of *York.*

The case was submitted for the opinion of the Court upon the following agreed statement of facts.

On the 12th *day of August,* 1831, one *David M. Coffin,* was committed to the jail in *Alfred,* on an execution for debt in favour of the present plaintiff. After said commitment, and on the same day, the prison keeper, a deputy of the defendant, permitted *Coffin,* the debtor, to go at large on his executing a bond with surety for the liberty of the jail yard, but which bond *had been approved by but one justice of the peace and of the quorum,* and the condition of which was, that " if the said *Coffin* shall " from henceforth continue a true prisoner in the custody of the " jailer of said jail, and within the limits of said prison, until he " shall therefrom be lawfully discharged without committing any " manner of escape," &c.

On the 31st day of *August,* 1831, *Coffin,* the debtor, appeared at the jail-house in *Alfred* and took the oath prescribed in an act, entitled " an act for the relief of poor debtors," before two justices of the peace, *quorum unus,* he having previously given due notice to the creditor of his desire to take the benefit of said act.

On the 30th day of *July,* 1832, the plaintiff addressed the

Coffin *v.* Herrick.

following letter to *James Hopkinson,* who signed said bond as the surety of *David M. Coffin,* the debtor. " Sir, The bond " which you signed as surety for *David M. Coffin,* for the liber- " ty of the jail yard, dated *August 12th,* 1831, was not in con- " formity to the statute of *Feb. 9th,* 1822, which requires the " bond to be approved by the creditor or two justices of the " peace, *quorum unus.* This bond was approved by *Henry* " *Holmes, Esq.* only. By the statute one year only is given to " commence an action, and as that time has nearly expired, I " write at this time to give an opportunity to settle the same, if " you think advisable.

" I am, Sir, yours, &c.
" *Charles Coffin.*"

If in the opinion of the Court the plaintiff was entitled to recover upon the foregoing statement of facts, the defendant was to be defaulted ; otherwise, the plaintiff was to become nonsuit.

*N. D. Appleton,* for the plaintiff, contended that, in this case the bond not being made pursuant to the statute, and the debt-or being permitted to go at large, the sheriff was liable for an escape.

1. It is not in conformity to the requirements of the statute, inasmuch as it was not *approved* by *two* justices of the peace, *quorum unus.* *Maine stat.* ch. 209, *sec.* 4 and 9. That the sheriff is liable for an escape under these circumstances, he cited, *Clapp v. Cofran,* 7 *Mass.* 101 ; *Bartlett v. Willis,* 3 *Mass.* 86 ; *Colby v. Sampson,* 5 *Mass.* 310 ; *Degrand v. Hunnewell,* 11 *Mass.* 160 ; *Clapp v. Hayward,* 15 *Mass.* 276 ; *Baxter v. Taber,* 4 *Mass.* 361 ; *Burroughs v. Lowder & al.* 8 *Mass.* 373 ; *Walter v. Bacon & al.* 8 *Mass.* 468 ; *Cargill v. Taylor & al.* 10 *Mass.* 206 ; *Codman v. Lowell,* 3 *Greenl.* 52 ; *Palm-er v. Sawtel,* 3 *Greenl.* 447 ; *Pease v. Norton,* 6 *Greenl.* 231.

2. The *condition* of this bond is not such as the statute re-quires. The 4th *sec. of Maine stat.* ch. 209, requires the condi-tion of the jail bonds to be as follows, viz. that the debtor " *will* " *not depart without the exterior bounds of the jail yard, until* " *lawfully discharged.*" The language of this bond is, " *if the* " *said Coffin shall from henceforth continue a true prisoner in*

Coffin *v.* Herrick.

" *the custody of the jailer of said jail and within the limits of*
" *said prison,* until he shall therefrom be lawfully discharged,
" *without committing any manner of escape.*" See the cases be-
fore cited.

3. The letter addressed by the plaintiff to *Hopkinson* was
not an *acceptance* of the bond. There is in the letter *no evi-
dence* of plaintiff's *intention* to *waive* his rights against the de-
fendant for the escape; and it would seem strange, if the very
letter in which the plaintiff objects to the *validity* of the bond,
on account of its *informality,* should be construed as an admis-
sion or proof of his acceptance of it. *Coffin* clearly intended
to avail himself of the informality of the bond, against whoever
was responsible for it. He does not pretend that there had
been any breach of its conditions, and of course the surety was
not liable. But the letter was probably written to the *surety*
instead of the *sheriff,* through *mistake* or *misapprehension.*

4. But even if the letter may fairly be construed into an ac-
ceptance of the bond, it will not discharge the plaintiff's right
of action against the defendant for the *voluntary escape* of the
prisoner.

To constitute a voluntary escape, it is not essential that the
officer actually intend an escape, but it may be through his care-
lessness. *Dane's Abr. ch.* 65, *art.* 1, 2; 2 *W. Blk. Rep.* 1048.

If an escape be voluntary in a jailer, nothing afterward will
purge it; — a right of action having once accrued, it can only
be defeated by release under seal, or an agreement for val-
uable consideration. *Ravenscroft v. Eyles,* 2 *Wilson,* 294; *Scott
v. Peacock,* 1 *Salk.* 271; *Dane's Abr. vol.* 2. 644, and 633;
*Brown v. Compton,* 8 *Term Rep.* 424; 2 *Wilson,* 294; *Sweat
v. Palmer,* 16 *Johns. R.* 181; *Levi v. Palmer & al.* 7 *Johns.
R.* 159; 1 *Saunder's R.* 35, *in note.*

All the cases show a distinction between actions on the *bond,*
and those brought for an *escape.*

It is the duty of the debtor to see that all the necessary for-
malities are observed, to obtain the benefit sought. The cred-
itor has no agency in the business — he can have none — and
it is not for the *obligors* in the bond to take advantage of their
own neglect, to avoid their own bond. See *Bartlett v. Willis,*
before cited.

But in actions against the sheriff for an escape, there must be a strict compliance with the provisions of the statute by the sheriff to protect him, as the authorities all show.

*D. Goodenow,* for the defendant, adverted to the *object* of imprisonment for debt — argued that it was not now *vindictive,* whatever it may have been in other times — that it was not to *punish* the debtor, but to secure a disclosure upon oath — and that a *liberal spirit* should be adopted in construing the statutes relating to this subject.

He maintained that the bond was good, though approved by but one justice. The provision for the *approval* of the bond by two justices was introduced for the benefit of the debtor, to prevent oppression. And also to protect the sheriff against an action of the creditor for accepting insufficient security. *Bartlett v. Willis & al. 3 Mass.* 92.

In *Clapp v. Cofran,* cited on the other side, the bond was not in *double* the sum. This was a defect in the *bond itself* — but the *approval* is no part of the bond.

In *Degrand v. Hunnewell,* it is only settled, that as the laws then were, a prisoner who had not given bond must be kept " *in salva et arcta custodia,*" in the *daytime* as well as the night.

" Cotemporary practice in doubtful cases, is certainly proper " to be resorted to in the exposition of statutes ;" — and it is confidently believed that in every county in this State, the practice has comported with the principles contended for. Many cases of similar bonds must have occurred, and the acquiescence of those interested is strong proof of the general sense of the profession. Not one case in *Maine* or *Massachusetts,* except *Bartlett v. Willis,* can be found, where any opinion is intimated upon this question.

But though a bond given for a debtor's liberties do not strictly conform to the requisitions of the statute, it has nevertheless been held to be good. *Baker v. Haley & al.* 5 *Greenl.* 240 ; *Kimball v. Preble & als.* 5 *Greenl.* 353.

As to the nonconformity of the bond to the statute requirements, in the particular phraseology pointed out by the counsel for the plaintiff, it is a sufficient answer to say that, the condi-

tion of the bond is *more strict* than the statute. Certainly in this, the plaintiff has no cause of complaint.

But in this case, however defective the bond may be, it was not objected to by the plaintiff at the time it was given, hence he is bound by it.

Further, it may properly be argued that the bond was *accepted* by him; for the jailer must be considered his agent for transacting the business, and as accepting the bond for him.

It was also *accepted* by his letter to *Hopkinson.* He there set up a claim *under the bond,* and threatened a suit upon it. This was virtually an election to *accept* the bond.

The opinion of the Court was delivered at the succeeding *June* term, in the county of Kennebec, by

MELLEN C. J.— The defence in this action, on which reliance is placed, is, that the debtor, *David M. Coffin,* for whose alleged escape it is prosecuted, was lawfully discharged from prison, soon after his commitment, in consequence of his having given bond for his enlargement, pursuant to the provisions in the fourth section of the act of 1822, *ch.* 209. The above section requires that such bonds should be approved by the creditor, or two justices of the peace, *quorum unus,* for double the amount for which the debtor is imprisoned. It appears that the bond given by the debtor, and *James Hopkinson,* his surety, was approved by only *one* justice of the peace and the *quorum.* Whether *such* an approval was wholly insufficient to justify the release of the prisoner from custody, we do not now decide : for it is contended that the bond was *approved and accepted* by the plaintiff, the creditor. If such was the fact, certainly the defence is maintained. An approval by the creditor may be *express* or *implied ;* it may be *before,* or *after,* the discharge of the debtor ; for, if after, it is a *ratification* of the act done by the prison keeper, in releasing the debtor from his custody. In proof of the alleged approval and acceptance of the bond by the plaintiff, the defendant relies on the letter of *July* 30, 1832, addressed by the plaintiff to *Hopkinson,* the surety, about eleven months and a half, after the date of the bond. It would seem from the language of the letter, that a

copy of the bond was before the writer.   In this letter, the plaintiff, after briefly describing the bond and remarking on its non-conformity to the requirement of the law, in the manner of its approval by *one* justice, instead of *two* justices of the *quorum*, he adds, " By the statute, one year only is given to " commence an action ; and as that time has nearly expired, I " write at this time to give you an opportunity to settle the " same, if you think advisable."   When he wrote this letter, he certainly had a *right* to approve and accept the bond, notwithstanding *one* justice only had approved it ; and if he *exercised* that right, and *did* approve *and* accept it, then he was bound by that act ; and if *he* was disposed to accept, and did accept the bond, it is perfectly clear that the *obligors* were bound by it ; it was their deed.   *Bartlett v. Willis & al. 3 Mass.* 86.   That was the case of a bond for the liberty of the yard, and it was not approved by two justices.   Defendants objected to it on this ground ; but *Story,* their counsel, gave up the point.   The Court said, if the plaintiff was satisfied with the sureties, it was sufficient ; and that the objection could not, in any form, avail them.   *Coffin,* having made his election, he must seek his remedy upon the bond, and can have none against the defendant.   He cannot in such case change his mind and revive that right of action against him which he once had, but which he had waived by his acceptance of the bond. Does the letter amount to such approval and acceptance ? This is a question of law which the Court must decide.   The eleventh section of the act before mentioned declares, " that " no action shall be hereafter maintained for the breach of any " bond given or to be given for liberty of the jail yard, unless " such action be brought within *one year* from and after such " breach."   Now, why was the letter written to *Hopkinson,* and a claim on the bond asserted against him, notwithstanding the manner in which it had been imperfectly approved, unless he had *elected* to approve the same himself, and *accept* it, knowing as he did the perfect responsibility of *Hopkinson* as a surety.   Why did he mention the limited time within which an action must be commenced, unless he relied on the bond as his security ?   The plaintiff is a lawyer, and he must have

well known that an action against the defendant for any official act of his deputy would not have been barred under *four* years. Unless we give this construction to the plaintiff's language, we must presume that he was practising deception with *Hopkinson*, and artfully endeavouring to obtain the amount of his claim from him, knowing at the same time that he had no pretence for such a dishonest experiment. We prefer to consider him as acting, in relation to the subject under consideration, with the views and upon the principles which we have particularly stated in this opinion. Proceeding on this ground, the conclusion is, that the letter of the plaintiff must be pronounced proof of an approval and acceptance of the bond ; of course the action is not maintained ; and, according to the agreement of the parties, a *nonsuit* must be entered.