# RILEY v. WHITTIKER & a.

A person committed to jail on final process, is to be kept in confinement in the jail, until he performs what he is ordered to do, or is discharged by due course of law.

If the jailer allows such prisoner to go at large, or if he takes him from the jail, into a part of the same building occupied by the jailer and his family, and allows him to take his meals there, it will be a voluntary escape.

In such case, the jailer after suffering such an escape, cannot retake or recapture his prisoner, and if he voluntarily return to the jail, the jailer cannot by receiving and keeping him, exonerate himself from liability for the escape.

After a trial under the bastardy act, B. was ordered by the court, to give a bond, &c., to the town of P. to save said town harmless &c., and pay costs of prosecution, &c., and to stand committed until this order was performed, and not furnishing the bond, was committed to jail, and the defendants, citizens of said town gave a bond to the jailer, on behalf of said town to pay the prison charges of the said B.   The jailer allowed said B. to go

outside of the rooms used as the jail, and take his meals in another part of the same building with the jailer's family, and also to go outside of the building, *held*, that these indulgences constituted a voluntary escape, and that after such escape, the jailer could not recover his prison charges of said town, nor of these defendants.

Debt on bond. The condition of the bond is as follows, viz : "The condition of this obligation is such that whereas one Elbridge G. Beers, by order of the supreme judicial court, held at said Newport on the fourth Tuesday of January, A. D. 1867, (in a prosecution for bastardy, in which said town of Plainfield is complainant, and the said Beers is respondent), has been committed to the jail in said county, now if the said town of Plainfield shall pay the prison charges against the said Beers, in case of his inability to pay the same then this obligation shall be void." The county jail in said county is arranged. as follows : under the same roof, and in parts of the same building, are certain apartments, made strong, and adapted to the purpose of confining prisoners committed to jail, and used for that purpose, and certain other apartments adapted for the use of the family of the jailer. At the January term, 1867, of the supreme judicial court for the county of Sullivan, a trial by jury was had, on a complaint of said Plainfield against said Beers, and said Beers having been, by the verdict of the jury, found chargeable, the following order was made, by the court, that the said Elbridge G. Beers, give a bond with sufficient sureties to said town of Plainfield, in the sum of four hundred dollars, to save the said town harmless from the maintenance of the child in said complaint mentioned, and to pay the costs of prosecution, taxed at fifty-one dollars and forty-one cents, and to stand committed until this order shall be performed.

The said Beers not performing the order of the court, was committed to the jail, and the bond in question was given, to the jailer, on behalf of the town, in pursuance of the provisions of the statute. The plaintiff, who is the jailer, seeks to recover payment for the board of said Beers from the first day of May. A. D. 1867, to the date of the writ and also, under the provisions of the statute in regard to judgments on bonds, to recover payment for the board of said Beers from the date of the writ till the eighth day of February, 1868, when the said Beers, on his petition, was, by the order of said court discharged, the town of Plainfield having been notified of the application, but paying no attention to it. The said Beers, after being committed, was permitted by the said Riley to leave that portion of the building above described, as being adapted to and used for the purpose of confining prisoners, and in which he was a part of the time confined, and to take his meals with the family of the jailer, and from time to time to go outside of the building and to amuse himself by looking on while others were playing the game of croquet. These indulgences, commenced before the said first day of May, and continued till said Beers was discharged, as above stated. The town of Plainfield, on becoming acquainted with the foregoing

facts, refused to pay the above claim, and paid no attention to the application for a discharge, claiming that by reason of said facts, the said Beers, was not, during any part of the time covered by said claim, a prisoner at the suit of said town.    The court is at liberty to draw any conclusions of fact as well as of law, warranted by the foregoing statement of facts, which statement is agreed for the purpose of this case only, and is not to bind the parties or be evidence against them in any other proceedings.    If the court shall adjudge that there has been a breach of the condition of the plaintiff's bond, judgment is to be rendered for such sum, as the court shall find to be due, under the provisions of the statute; otherwise judgment to be rendered for the defendant.

The questions arising on the foregoing case were reserved.

*Barton and Wait*, for plaintiff.

*Cushing*, for defendant.

SARGENT, J.    There is a broad distinction between an arrest on final process and on mesne process.

This difference arises from the different nature of the object to be attained, of the command in the precept, and of the duty to be performed by the officer in the two cases.

On mesne process the officer is to arrest the body of the defendant and have him before the court at the return day of the writ, and if he do this, it is sufficient, no matter if there be an escape of the prisoner, and it is held to be immaterial whether the escape be voluntary or negligent on the part of the officer; in either case the right of recaption still exists and the officer obeys the mandate of his writ, if he has the defendant in court on the return day.    *Pariente* v. *Plumbtree*, 2 B. & P. 35; *Alingham* v. *Flower*, 2 B. & P. 246; *Langdon* v. *Hathaway*, 1 N. H. 369.

But on final process the object is, to deprive the defendant of his liberty in order that he may be induced to pay the judgment against him, and the object of the process is delayed if not defeated by an escape of any kind.    The officer in such case, is not to *keep* the defendant, but to commit him to jail, or deliver him to the keeper of the jail and he is commanded to keep him in said jail, until he shall pay or perform what he is required to do, and either the officer or jailer will be guilty of an escape, if he fail to do what he is thus commanded to do.

Thus, if an officer has an execution against the body of a defendant, in which he is commanded to commit said defendant to jail, he must commit him immediately or in reasonable time, and without unreasonable indulgence.    *Langdon* v. *Hathaway, supra, Olmstead* v. *Raymond* 6 Johns. 62; *Palmer* v. *Hatch*, 9 Johns. 329; *Kellogg* v. *Gilbert*, 10 Johns. 220; *Wool* v. *Turner*, 10 Johns. 420; *Wheeler* v. *Bailey*, 13 Johns. 366, or if the jailer gives the prisoner liberties which he is not authorized by law to give (unless in case of great

necessity, such as sickness, fire &c.,), that is, an escape on the part of the jailer, or the sheriff, whose agent the jailer is, *Colby* v. *Sampson*, 5 Mass. 310.

And on final process, there is held to be a distinction between a voluntary and a negligent escape. The officer or jailer, who is guilty of a voluntary escape, has no right to recapture the prisoner, though that right exists in case of a mere negligent escape. *Butler* v. *Washburn*, 25 N. H. 251, 258, and cases cited, *Clark* v. *Cleveland*, 6 Hill 344.

In cases like the present, when a person is committed on a mittimus, until he shall perform the sentence of a magistrate, or by an order or process of court, in order to compel a payment or performance of a sentence, the command is to the sheriff, to convey the respondent safely to the jail, in C. in said county, and deliver him to the keeper thereof, and the said keeper is commanded to receive the said respondent into his custody in said jail and him there safely keep, until he shall pay said fine and costs, (or give said bond, or perform the sentence imposed) or is discharged by due order of law.

There is no discretion left with the jailer, (except it may be in extreme emergencies as above stated.) He is not to consult his own, or his prisoners convenience, and board him in the jail or in his own private family out of the jail, as is most convenient. There are certain rooms in this and all other jail buildings, which are known and recognized as the jail, in which criminals and persons committed to jail are confined, and these are just as distinct from the other rooms, that are occupied by the jailer's family, where he lives under the same roof, which covers the jail proper, as though they were in different houses and under separate roofs. If the jailer may take a prisoner out of the jail proper, and have him out with his own family, in their rooms, where he is not deprived of his liberty, nor confined within the proper wall, doors and bolts of the prison, he might take him to his dwelling house, a mile distant, or any where in the county, and board him there, or if he can let his prisoner go out of doors, and out of the jail, to witness the sports of others, he can let him go out to engage in the same sports, or work on the farm, or visit from house to house, as he may choose.

The very object of committing these men to jail, is to put them in a place that shall not be desirable, a place of some, perhaps of considerable discomfort and to keep them there, until they shall be induced to perform, or make every reasonable effort to perform, the sentence imposed, and when that has been done, and the prisoner is really unable to perform the sentence, then the law appoints a tribunal that may consider his case, and may exercise a wise discretion in the matter, and discharge the prisoner when the circumstances warrant it. But that tribunal, is not the sheriff nor the jailer. They have no discretion, as to whether they shall obey the precept of the law or not. They are to receive the prisoner into their custody *in jail*, and him *there* safely keep—not safely keep him somewhere else

or where he chooses, or where he can most conveniently keep him, but *there in said jail*, to safely keep him, until he is discharged &c.

It would seem, then, to be plain, upon the bare statement of the case, that here had been an escape, and on the part of the jailer a voluntary escape of this prisoner.

If that be so, then the jailer had no right, after such an escape, to retake or recapture him, and the fact that the prisoner voluntarily returns after such an escape, would be no justification of, or excuse for the officer, and does not lessen, or in any way affect his liability.

In *Fairchild* v. *Chase*, 24 Wend. 380, it is held that an officer, having a person in jail on final process, cannot excuse a voluntary escape, except by act of God or the public enemy, that he stands in this respect on the same ground with a common carrier 1 Rolle's Ab. escape D.  In *Green* v. *Hern*, 2 Penn. R. 167, 169 Gibson, C. J., says, "that according to the common law, since the day of Rolle's Abridgement, the jailer can avail himself of nothing as matter of defence, but an act of God or the common enemy." The same judge also states the same rule in *Wheeler* v. *Hambight*, 6 Serg. & Rawle. 396, where he says, the liability of the sheriff is in this respect like that of a common carrier.   The sams rule is recognized in *Slemaker* v. *Marriott*, 5 Gill & Johns. 410.

Every liberty given to a prisoner, not authorized by law, is an escape.   If the sheriff makes of the prisoner, jail keeper, and gives him the key, it is an escape, for which the sheriff is liable for the prisoner, by being the keeper and having the key, is no longer *imprisoned* and *restrained* of his liberty ; *Colby* v. *Sampson*, 5 Mass. *supra*, *Gage* v. *Graffam*, 11 Mass. 183 ; *Bartlett* v. *Willis*, 3 Mass. 86, 105 ; *Stevens* v. *Webb*, 2 Vt. 344 ; *Sherburne* v. *Beattie*, 16 N. H. 437, and cases cited ; *Bolton* v. *Cummings & al.*, 25 Conn. 410, 423.

In *Clapp* v. *Cofran*, 10 Mass. 372, where a prisoner confined on execution, had a room in an upper chamber of the house, which had been appropriated and used as a part of the jail, where he spent his nights, and had the liberty of the yard in the daytime, and it appeared that the prisoner in the evening, which was regarded as part of the night, was frequently in the apartments on the lower floor of the house, where the jail keeper and his family had their habitation, it was held that an escape was committed, in the prisoner's being allowed thus to spend his evenings with the jailer's family, though in the same house where his appropriate lodging room was located, and it was further held that the fact that the jailer had for a long time permitted and indulged his prisoners in the privilege of spending. their evenings in the kitchen of his dwelling, did not excuse the jailer for the escape ; that any partial indulgence depending upon the favor of the jail keeper, was an abuse of his authority which could not be justified by its continuance for any length of time. *Bartlett* v. *Willis*, 3 Mass. 86 ; *Freeman* v. *Davis*, 7 Mass. 200 ; *Barrows* v. *Lowder*, 8 Mass. 373 ; *McLellan* v. *Dalton*, 10 Mass. 190.

The bond in this case, was given by respondents to secure the

payment of the board of Beers, while misprisoned in this proceeding, on complaint of the town of Plainfield: The bond cannot be held, to hold the respondents liable for anything, for which the town of Plainfield would not be liable ; and the question is, was the town liable for Beers' board, after the jailer had voluntarily allowed him to escape ? The case finds, that the town had never consented to receive Beers back again after such escape, or did anything to make themselves liable for the board, unless they were so liable upon the bond in question.

The jailer being thus liable for the voluntary escape of the prisoner, and having no right to recapture him, or to receive him on behalf of the town, if he came back voluntarily, must be held to have received and kept him after the escape, upon his own responsibility, or by an arrangement with the prisoner, and he must look to Beers alone, for the pay for his board, as he would in case of any other private boarder. He should not be allowed, to charge the county anything, very cearly, as he has not and never had, any claim in that quarter. His claim is either on Plainfield or on Beers, and we hold that under the circumstances of this case, it must be upon Beers alone.

*Judgments for defendants.*