Lane v. Alexander.

Ex parte Lane.

Opinion delivered April 27, 1925.

1.  Gaming—recovery of money lost.—Under Crawford & Moses' Dig., § 4899, an action is maintainable to recover money or property lost at any game or gaming device or on any bet or wager.

2.  Replevin—sufficiency of complaint.—A complaint in replevin which alleges that plaintiff is the owner of the property described, and that defendant unlawfully has possession thereof and refuses to deliver same up to plaintiff on demand, is a sufficient allegation that plaintiff is entitled to the immediate possession of the property.

3.  Pleading—sufficiency of complaint on demurrer.—In determining the sufficiency of the complaint on demurrer, it is proper to consider the facts pleaded in the answer.

4.  Gaming—remedy for recovery of property lost in gambling.— Rev. Stat., c. 68, § 1, providing that property lost at any game or gambling device may be recovered by action of detinue or trover, has been modified by the Code provision abolishing forms of action (Crawford & Moses' Dig., § 1031), and such property may now be recovered in an action of replevin.

5. BAIL—LIABILITY OF SURETIES.—The liability of sureties on an appearance bond, within Crawford & Moses' Dig., § 8645, does not mature unless there is a breach of condition by the failure of the defendant to submit to the judgment, and until after a return by the proper officer of an execution against the body of the defendant showing that he could not be found.

6. CONTEMPT—POWER OF COURT TO ENFORCE JUDGMENT.—Under Crawford & Moses' Dig., § 8644, providing for the arrest of the defendant in replevin where the property has been removed or concealed, *held* that where the court finds that the defendant so arrested has in his possession bonds belonging to the plaintiff which he refuses to deliver up, he may be committed to jail until he makes delivery thereof, or executes a bond to make such delivery or to pay the value of the bonds so removed or concealed.

7. CONTEMPT—POWER TO IMPRISON CONTEMNOR.—The power of a superior court to imprison a defendant in replevin who refuses to deliver property of plaintiff wrongfully in his possession continues as long as his contumacy persists.

8. REPLEVIN—DELIVERY OF PART OF THE PROPERTY.—Delivery by defendant of part of the property involved in an action of replevin did not abate the power of the court after judgment to compel delivery of bonds still held and found to be in defendant's possession.

9. JUDGMENT—MERGER.—A judgment of contempt, growing out of a civil action of replevin to recover bonds lost in a gambling transaction, *held* not to merge in a judgment of conviction of larceny of such bonds where the latter was suspended by execution of a supersedeas bond.

Appeal from Greene Circuit Court, and certiorari to Greene Circuit Court; *W. W. Bandy,* Judge; affirmed.

*Little, Buck & Lasley* and *Huddleston & Little,* for appellant.

*Block & Kirsch,* for appellee.

MCCULLOCH, C. J. Appellee instituted an action against appellant in the circuit court of Greene County to recover possession of certain United States bonds, accurately and particularly described, of the aggregate value of $20,100. Appellee alleged in his complaint that he is the owner of the bonds described, and that "the defendant unlawfully has possession thereof, and refuses to deliver the same up to plaintiff upon demand."

Proper affidavit was filed for immediate delivery of the property, and the affidavit contained an allegation, as provided by statute in cases of replevin (Crawford & Moses' Digest, § 8642), to the effect that the property had been by the defendant "sold, removed or disposed of, with intent to defeat the plaintiff's action," and an order of delivery was issued by the clerk with a capias clause for the arrest of appellant. The officer in whose hands the writ was placed for service failed to find the property, and he arrested appellant, who gave bond with surety as provided by statute (Crawford & Moses' Digest, §§ 8644, 8645), and was released. The sureties on appellant's bonds subsequently surrendered him into custody, and he was brought into court and appeared by attorney and filed his answer, tendering as a defense that he had won the bonds from appellee at the gaming table.

The court sustained appellee's demurrer to the answer, and, appellant declining to plead further, rendered judgment against appellant for the delivery of the bonds, after hearing oral evidence as to the actual possession and the value of the bonds. Appellant was present in court when the judgment was rendered, and the judgment of the court contained a recital that "defendant is in open court, admitting that he has possession of said bonds, and refuses to deliver the same up to plaintiff," and the court thereupon adjudged appellant to be in contempt of court, and committed him to jail, "there to remain until he should deliver all of said bonds, with the coupons thereto attached, to plaintiff, or pay the value of said bonds as found by the court, unless defendant shall immediately execute bonds in the sum of $20,000 to plaintiff, conditioned that he will deliver said bonds or pay the value thereof, or execute supersedeas bond on appeal as required by law."

The grand jury had previously returned an indictment against appellant for the crime of grand larceny, alleged to have been committed by stealing the bonds from appellee, and the judgment in the replevin suit

was rendered during an intermission in the trial of the criminal case. No objection to that procedure was made, however, by appellant, and no postponement of the trial was requested. Later, during the same day, appellant was convicted in the criminal case and sentenced to a term in the penitentiary, but he prosecuted an appeal to this court from that judgment, and executed an appeal bond in an amount fixed by the trial court. Appellant was, however, held in custody under the court's order in the replevin case, and, on January 20, 1925, a month after the former proceeding, he presented to the circuit judge in vacation a petition for writ of habeas corpus praying for discharge from custody. There was a hearing before the circuit judge in chambers, and a judgment was rendered refusing to discharge appellant from custody and remanding him to the custody of the sheriff, to be confined until discharged by the circuit court. Appellant also secured a writ of habeas corpus from the chancellor of that chancery district, but, on a hearing of the writ, the chancellor refused to discharge appellant from custody, and remanded him to the custody of the jailer, to be held under the order of the circuit court.

The record in both of the proceedings last mentioned has been brought here by writ of certiorari, and, by agreement of counsel on both sides, has been consolidated with the appeal from the judgment in replevin and the order of the court holding appellant to be in contempt for failure to deliver the bonds. The questions in all the case have been briefed together and can be disposed of in one opinion.

It is contended, in the first place, that the judgment in the replevin suit is void for the reason that the complaint fails to state a cause of action, in that it does not allege that appellee is entitled to the immediate possession of the bonds, and that the question of the insufficiency of the complaint was raised by the demurrer to the answer, which reached back to the complaint.

*Dallas* v. *Moseley,* 150 Ark. 210. The answer tendered no valid defense, for the statutes of this State expressly authorize the maintenance of an action for the recovery of money or property lost at any game or gaming device or on any bet or wager. Crawford & Moses' Digest, § 4899. Our conclusion on this feature of the case is that a cause of action is stated in the complaint, notwithstanding that there is no express allegation that appellee is entitled to immediate possession of the property in controversy. There is no statutory requirement that a complaint in replevin must contain allegations, in precise words, that the plaintiff is the owner of the property in controversy and is entitled to immediate possession thereof. Therefore it is sufficient if the complaint contains those allegations in express words, or contains language from which there is the necessary implication of ownership and right to immediate possession. *Climer* v. *Aylor,* 123 Ark. 510; *Grever* v. *Taylor,* 53 Ohio St. 621, 42 N. E. 829. The complaint now under consideration contains a specific allegation that appellee is the owner of the property, and this constitutes a plea of general ownership, and that appellant is in unlawful possession thereof. There is a necessary implication from these two allegations that appellee is entitled to immediate possession, for, if appellee is the owner, right of possession follows general ownership, unless otherwise shown, and the allegation of unlawful possession by appellant negatives the legal right of possession otherwise than in appellee as the owner. In addition to that, it is clear that the answer supplies the omission in the complaint by the allegation that appellant won the property from appellee at the gaming table. This constitutes an affirmative allegation that the title and likewise the actual possession was with appellee at the time the property unlawfully passed into the hands of appellant. Therefore the inference is conclusive from the pleadings, when read together, that appellee is not only the owner but is entitled to the immediate possession.

It is proper to consider the facts pleaded in the answer in determining the sufficiency of the complaint when called in question by a demurrer. *Thompson* v. *Jacoway*, 97 Ark. 509.

It is also contended that the judgment is void for the reason that the statute which created the right of action for the recovery of money or property lost in gaming prescribed the particular remedy, and that replevin was not the prescribed remedy. The statute in question was a part of the Revised Statutes (chap. 68, § 1), and read as follows:

"Any person who shall lose any money or property at any game or gambling device, or any bet or wager whatever, may recover the same by action of debt, if for money, and, if for property, by action of detinue or trover, against the person winning the same; but such suit shall be instituted within ninety days after the paying over of the money or property so lost."

Later digesters, beginning with Gantt's Digest of 1874, omitted from the section the words, "by action of debt," and the words, "by action of detinue or trover," and in all the digests down to Crawford & Moses' Digest, § 4899, those words are deleted. It is argued that it was error to eliminate those words, but we are of the opinion that the change was authorized by the Code provision (Crawford & Moses' Digest, § 1031) abolishing all forms of action. Counsel rely on the case of *Nealy* v. *Powell*. 20 Ark. 164, holding that replevin would not lie for the recovery of property lost in gaming, for the reason that the statute creating the right prescribed detinue or trover as the form of action. At that time there was no statutory provision abolishing forms of action, and all of the common-law forms were in vogue. In fact, the Revised Statutes and Gould's Revision of 1858 contained provisions for both detinue and replevin as forms of action, notwithstanding the fact that the definition of replevin as a form of action overlapped that of the action of detinue by providing the remedy of replevin where

property was wrongfully detained as well as where wrongfully taken. Revised Statutes, chap. 12, § 1; Gould's Digest, chap. 145, § 1.

The grounds for the decision in *Nealy* v. *Powell, supra,* were that detinue as a form of action was still preserved and the statute creating the right prescribed that remedy, which was exclusive. The fact that there were concurrent remedies did not change the rule, but, now that the Code has abolished forms of action, thereby eliminating the distinction between purely concurrent remedies, the digesters have properly eliminated from the statutes the common-law action of detinue, as it is entirely supplanted by the enlarged remedy of replevin conferring a right of action which embraced the form of action described as detinue. The change wrought by the Code provision referred to above necessarily gives a right of action in cases of this kind, and the form of action is included within the remedy defined in the scope of an action of replevin. This disposes of the contention with reference to the invalidity of the judgment for the recovery of the property.

The action of the court in ordering the retention of appellant in custody until he makes delivery of the bonds pursuant to the judgment of the court is challenged on several grounds. It is first insisted that there is no statutory authority for personal detention of a defendant in replevin after the judgment of the court. The pertinent sections in the chapter on replevin are as follows:

"Section 8642. The order for the delivery of the property to the plaintiff shall be addressed and delivered, with a copy thereof, to the sheriff. It shall state the names of the parties to the action, and the court in which the action is brought, and direct the sheriff to take the property, describing it, and stating its value as in the affidavit of the plaintiff, and deliver it to him, and make return of the order on a day to be named therein, and to summon the defendant to appear on such day in the court and answer the plaintiff in the premises; and, if

the plaintiff shall file an additional affidavit that he believes the property has been concealed, removed or disposed of in any way, with intent to defeat the plaintiff's action, the clerk or magistrate shall insert a clause commanding the sheriff, or other officer, that, if the property mentioned in the order cannot be had, to take the body of the defendant, so that he appear at the return day of the order to answer the premises. The order shall be made returnable as an order of arrest is directed to be returned." Crawford & Moses' Digest.

"Section 8644. If the property described in the order shall have been removed or concealed, so that the officer cannot make delivery thereof, he shall (when the order contains a capias clause) arrest the body of the defendant and hold him in custody, in the same manner as on a *capias ad respondendum* in a personal action, until he shall execute the bond prescribed in the next section, or be otherwise legally discharged." *Id.*

"Section 8645. The defendant shall be entitled to be discharged from such arrest, at any time before final judgment had in the cause, upon executing to the officer who shall have made such arrest, with the addition of his name of office, a bond in a penalty of at least double the value of the property described, as sworn to in the affidavit, with such security as shall be approved by such officer, conditioned that such defendant shall abide the order and judgment of the court in such action, and that he will cause special bail to be put in, if the same be required." *Id.*

It has been repeatedly decided by this court that the bond provided for in § 8645 is an appearance bond, and not a bond to perform the judgment of the court. *Duncan* v. *Owens,* 47 Ark. 388; *Daniels* v. *Wagner,* 156 Ark. 198; *Jones* v. *Keebey,* 159 Ark. 586. The manifest design of this provision of the statute is to procure the personal attendance of the defendant at the time of the rendition of the judgment, and to allow him to give bond for his appearance. Liability of the sureties on the bond does not mature unless there is a breach of the condi-

tions of the bond by the failure of the defendant to submit himself to the judgment and a return by the proper officer of an execution against the body of the defendant, showing that he could not be found. *Duncan* v. *Owens, supra.* It is true that there is no express provision in the statute authorizing the court to deal personally with a defendant who submits himself in judgment or who is brought before the court pursuant to process, but the fact that the statute contains express authority for subjecting the defendant in person to the authority of the court necessarily implies the power of the court to deal with him in any appropriate manner to compel obedience of the court's judgment. In other words, the statute provides a means whereby the court may act upon the person of the defendant in the enforcement of its judgment, and it is among the inherent powers of all courts of superior jurisdiction to enforce there judgments and orders. Works on Jurisdiction of Courts, p. 170; 7 R. C. L., p. 1034. ''A court having jurisdiction to render a judgment or decree, has authority and jurisdiction,'' it is said in R. C. L., *supra,* ''to make such orders and issue such writs as may be necessary and essential to carry the judgment or decree into effect and render it binding and operative.'' This power was recognized by the decision of this court in *Meeks* v. *State,* 80 Ark. 579, where we upheld an order of the chancery court committing the appellant for contempt on account of failure to comply with an order of the court for the delivery of property. That was an order made by the chancery court, but there is no distinction between the inherent powers of courts of superior jurisdiction in regard to the enforcement of their judgments. Courts of chancery afford peculiar remedies not available at law, but the power to enforce a decree or judgment inheres in all courts of superior jurisdiction, regardless of the peculiar remedies which may be offered by each. In the case just cited we held that the effect of such an order was not imprisonment for debt, and the authorities on that subject were fully reviewed. In *Hand* v. *Haughland,* 87 Ark..

105, we held that courts of probate possess power to enforce, by contempt proceedings, orders of distribution. There is a statute authorizing it (C. & M. Dig. § 200), but the statute is only declaratory of the inherent power of the court. It was, as before stated, decided in *Duncan* v. *Owens, supra,* that liability of the sureties on an appearance bond could not be enforced until after return of the writ, and it is argued from this that the court had no power to commit the defendant until there was a return of an execution or writ of possession under the judgment. There is no analogy between the two questions, for liability of sureties is not involved in the present case, the sureties having surrendered appellant into custody, and the record recites that the court found from the evidence that appellant had possession of the property and that he refused .to deliver them. These recitals of the court show that appellant was committed, not for offensive demeanor in the presence of the court, but for his recalcitrancy in refusing to comply with the order of the court, and this constituted a civil contempt which authorized the court to resort to the detention of appellant in custody as a means of enforcing its judgment. Appellant was then in the presence of the court, brought there pursuant to the original capias for the very purpose of requiring him to answer the court's orders and judgment. The statutory provision would therefore be an empty formality if the court possessed no power to compel the appellant to obey the orders of the court by surrendering the property. Of course, the judgment would be erroneous unless it was shown that appellant had possession of the property and. was able to comply with the court's orders, but this fact is shown by the recitals of the court, which we must presume were supported by sufficient evidence. The power of the court over the person of the appellant therefore remains so long as his contumacy persists, and the fact that a few of the bonds were delivered to plaintiff before judgment does not abate the power of the court after judg-

ment to enforce the same as to the bonds still held by appellant and found to be in his possession.

Finally, it is insisted that the judgment for contempt was merged in appellant's judgment of conviction for larceny. Counsel rely on the case of *Williams* v. *State*, 125 Ark. 287, but that case has no application, for the reason that it was an attempt on the part of the trial court to postpone the severer punishment of conviction of felony until the expiration of an indefinite order of confinement for contempt. In the present case appellant, though convicted, gave bond for appeal, which suspended the execution of the judgment of conviction, therefore there could be no merger into the suspended judgment. The question of priority in enforcing two judgments, one of conviction for felony and the other for contempt, does not arise.

Our conclusion is that there was no error in any of the proceedings, and the judgment in the civil case is affirmed, and in each of the habeas corpus cases brought here by certiorari the judgment is affirmed and the writs of certiorari quashed. It is so ordered.

HART, J., dissents.