(10 App. Div. 25.)

PEOPLE ex rel. ILLINGWORTH v. COURT OF OYER AND TERMINER OF CITY AND COUNTY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. November 6, 1896.)

CONTEMPT—DISOBEYING MANDATE—COMMITMENT.

Code Civ. Proc. § 3343, subd. 2, defining "mandate" as including "a writ, process, or other written direction" by a court or judge, is not exclusive, and therefore a commitment addressed to the sheriff by name, and delivered to a deputy sheriff to be executed, is a mandate of the court, for failure to execute which the deputy may be punished under Code Civ. Proc. § 8, subd. 3, giving courts of record power to punish as for a criminal contempt willful disobedience of its lawful mandates.

Certiorari by John Illingworth to review the decision of Mr. Justice Barrett in the court of oyer and terminer, adjudging him guilty of contempt, and sentencing him to 10 days' imprisonment, and to pay a fine of $50. Dismissed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Burnett, Stayton & Hagen, for appellant.
John D. Lindsay, for respondent.

PATTERSON, J. The writ of certiorari in this case brings before the court but a single question. All the facts are admitted

by stipulations which form the substantial part of the record.  It is admitted that the relator was a deputy sheriff, designated as a "prison guard," who, among other things, was charged with the duty of conveying persons committed by the criminal courts to the city prison when required so to do.   On the 10th of May, 1895, one William W. McLaughlin was on trial in the court of oyer and terminer, and on that day a commitment was issued, addressed to the sheriff of the city and county of New York, by name, directing that the said McLaughlin stand committed to the custody of the warden of the city prison of the city of New York, until thence delivered by due course of law.   That commitment was in writing, and was certified to by John F. Carroll, the clerk of the court, as a true extract from the minutes of the trial.   It was delivered to the relator, acting as deputy sheriff or prison guard; and he actually took into custody the said McLaughlin, and, knowing the order of the court, and having the same in his possession, and having such custody of the prisoner, he failed to execute the warrant for a period of seven hours and a half, and during that time permitted McLaughlin to walk about the city, took him to (for the said McLaughlin's pleasure), and kept him at, a bath house, far removed from the city prison, and without any authority so to do. The relator was brought before the court to show cause why he should not be punished for a contempt; and, upon the facts, he was adjudged to be guilty of a criminal contempt, in that he willfully disobeyed the order lawfully made by the court.   And thereupon it was adjudged that for the criminal contempt he be imprisoned in the county jail in the city of New York for 10 days; that he pay a fine of $50; and that, in default of such payment, he be imprisoned until such fine be paid, not exceeding 30 days in addition to the period above fixed.

It is stipulated between the parties that the relator does not raise any contention as to the power of the court of oyer and terminer to issue the commitment, nor as to the form thereof; or, in other words, it is admitted that the commitment contains all the formalities requisite under the law to the regularity of such a process.   By this stipulation, there is therefore eliminated from the case any consideration of the sufficiency of the commitment as a written order, or as one signed by the judge; but the question is left as to the process being a mandate, within the meaning of subdivision 2 of section 3343 of the Code of Civil Procedure, in this respect: that it does not mention the relator as the person named or otherwise designated in the commitment to do or refrain from doing the act therein specified, but was addressed to the sheriff.

It may well be contended that the commitment, being addressed to the sheriff, was also addressed to his deputies, for the sheriff may act through deputies under all processes issued to him; but we need not consider the nature of the duties of a deputy sheriff or prison guard.   The relator being duly appointed, and it being among his duties to convey persons committed by the criminal courts to the prison when lawfully required so to do, nothing need

be said respecting the authority and power of the relator to execute the commitment which was handed him, and which, in effect, he undertook to execute. The only open question is whether this deputy sheriff's name should have appeared on the commitment as the person instructed or directed to execute it, and does the omission of such name take the process out of the meaning of the word "mandate," as that word is used in the provisions of the Code of Civil Procedure applicable to criminal contempts. It is provided by section 8 of that Code that a court of record has power to punish for a criminal contempt for certain designated offenses, and no others, among which is the willful disobedience to its lawful mandate. Subdivision 3. It is claimed that this commitment is not a lawful mandate, and that, by subdivision 2 of section 3343, it is provided that the word "mandate" "includes a writ, process, or other written direction, issued 'pursuant to law, out of a court, or made pursuant to law, by a court, or a judge, or a person acting as a judicial officer, and commanding a court, board, or other body, or an officer, or other person, named or otherwise designated therein, to do, or to refrain from doing, an act therein specified." That section is found in chapter 22 of the Code, relating to definitions and regulations concerning the construction, effect, and application of that Code. It is also provided in section 3343 that, "in construing this act," the rules prescribed in chapter 22 must be observed, except where a contrary intent is expressly declared in the provision to be construed, or is plainly apparent from the context thereof. Recurring to section 8 and its provisions concerning the power of the court to punish as for a criminal contempt a person guilty of willfully disobeying its lawful mandate, we think it is plainly apparent from the context thereof, as well as from the object and scope of that section, that it was not intended that the inclusive words of subdivision 2 of section 3343 should apply to such a commitment as that intrusted to this relator for execution. The subject of legislation in the article of the Code of which section 8 forms a part is the general powers and attributes of courts. The provisions relating to contempts are such as were deemed necessary to the effectual administration of justice in those courts. Many criminal contempts are enumerated, viz.: Disorderly, contemptuous, or insolent behavior committed during the sitting of the court, in its immediate view and presence, and directly tending to interrupt its proceedings, or to impair the respect due to its authority; breach of the peace, noise, or other disturbance; contumacious and unlawful refusal to be sworn as a witness, or, after being sworn, to answer any legal and proper interrogatory; publication of a false or grossly inaccurate report of its proceedings; and willful disobedience or resistance to its lawful mandate. The word "mandate" here is evidently used in the sense of a command or order or direction which the court is authorized to give, and which a person is bound to obey. They are many such orders given by a judge on the trial of a cause that are not reduced to writing, or directed in writing to the person who is bound to obey them. A command given to a clerk or to an attendant or to a witness not

to leave the court room until a trial is concluded, and many others that might be suggested, are lawful orders and directions of the court, disobedience of which would tend to embarrass or defeat the administration of justice; and this provision of the statute, referring to mandates, must be given such a construction as would enable the judges, in the performance of their duties, to carry on the business of the court without being obliged to reduce to writing, sign, and direct every such order or mandate, obedience to which might be lawfully required. The word "mandate," in this connection, certainly includes all that is comprehended in the enumeration in section 3343. But that is not an exclusive enumeration, and that it was not intended to be so may fairly be presumed from the effect of the provision with respect to the observance of the definitions of terms used in the Code, which is compulsory except where a contrary meaning is evidently or plainly intended in the use of the word.

It is said that a contrary view has been taken to this in certain cases to which our attention has been called. The case of McKelsey v. Lewis, 3 Abb. N. C. 61, was a special term case, in which the citation from the Code was not altogether accurate. The case of People v. Court of Oyer and Terminer, 36 Hun, 277, is not a determination of the question at all. Mr. Justice Daniels, in his opinion, took the view for which the relator here contends. Mr. Justice Brady merely concurred in the result of the decision in the case, and not in the opinion of Mr. Justice Daniels. Presiding Justice Davis, in his opinion, combated most successfully the view expressed by Judge Daniels, and held, as we hold, that the statute of inclusion is not in this case one of exclusion, and that the commitment was a mandate, within the meaning of subdivision 3 of section 8 of the Code of Civil Procedure.

The writ of certiorari must be dismissed, with costs. All concur.