## YORK *v.* STATE.

Opinion delivered January 25, 1909.

CONSTRUCTIVE CONTEMPT—NECESSITY OF AFFIDAVIT.—Proceedings for a contempt of court not committed in the immediate view or presence of the court must be based upon an affidavit calling the court's attention to the matter, or something equivalent thereto.

Original petition for certiorari to Jefferson Chancery Court; *John M. Elliott,* Chancellor; judgments quashed.

*Bridges, Wooldridge & Gantt, S. M. Taylor* and *Rose, Hemingway, Cantrell & Loughborough,* for appellants.

1. As there is no right of appeal from a judgment for contempt, this court will quash such judgments for *error,* as well as for *excess,* of power and for *irregularities* in proceedings. 22 Ark. 151; 73 Ark. 538, 366.

2. The judgments were void, there having been filed no affidavit or its equivalent. This is required in all cases of constructive contempt. 1 Tidd, Pr. 479; 4 Blackst. Com. 286-7; 1 Brews. 218; Rapalje on Contempt, § 93; 62 Fed. 827; 81 Pac. 409; 82 *Id.* 853; 17 Cal. 261-2; 28 Pac. 964; 1 Del. Ch. 25; 52 Conn. 147; 2 Blatch. 76; 57 Ill. App. 577; 36 Ind. 196, 213; 65 *Id.* 504; 28 Pac. 178; 26 *Id.* 937; 27 *Id.* 1004; 28 *Id.* 1076; 92 Ky. 449; 17 S. W. 435; 2 Bland, Ch. (Md.), 461, 486, 114 Mass. 230-9; .74 N. E. 677-9; 82 Pac. 450; 45 N. W. 116; 62 *Id.* 832; 67 *Id.* 796; 14 N. W. 143; 74 *Id.* 1098; 54 *Id.* 415; 2 Utah 560, 594; 45 Pac. 644; 65 *Id.* 759; 1 Wyo. 155.

*W. F. Kirby,* Attorney General, and *Dan'l Taylor,* Assistant, for appellee.

1. Courts have power and the right to cite for contempt and punish wrongdoers of their own motion. 44 L. R. A. 159; 24 W. Va. 416; 81 Mich. 592.

2. No formal pleadings are necessary, and defects in process are unavailable as a defense, if defendants are in court and informed of the charge to be answered. 2 High, Inj. Par. 1416.

3. Injunction not void because it was issued without notice. Kirby's Digest, § 3973.

4. Mere errors or irregularities do not render an injunction void, only voidable on motion or by direct proceedings. The violation of an injunction based on irregular proceedings renders the defendant liable for contempt. 32 Pac. 924; 51 Kan. 241: 113 Cal. 382; 7 Wyo. 464; 35 Kan. 616; 51 *Id.* 241; 20 L. R. A. 446; 35 N. J. Eq. 422; 9 N. Y. 263; 62 N. W. 1096; 44 Neb. 739; 45 Pac. 323; 53 *Id.* 299; 12 *Id.* 42; 32 *Id.* 924; 73 N. W. 788, 82; 98 Wis. 143; 7 N. D. 155; 12 N. E. 136; 2 High on Injunctions, Par. 1416; 6 S. E. 396; 34 Atl. 56.

BATTLE, J. J. B. York and Robert York present separate petitions for writs of certiorari to this court, asking it to quash judgments of the Jefferson Chancery Court fining J. B. York

ten thousand dollars and Robert York five thousand dollars for a violation of an order of injunction issued by that court in a suit wherein John F. Rutherford and M. F. Rutherford were plaintiffs, and the Bluff City Lumber Company, J. B. York, Robert York, C. L. Browning, and C. J. Samstag were defendants.

About the 24th day of August, 1907, John F. Rutherford and M. F. Rutherford, his wife, instituted the above-mentioned suit, alleging that the Bluff City Lumber Company was a corporation; that the defendant Samstag owned two shares of its stock, C. L. Browning two shares, J. B. York and Robert York 1078 shares, and plaintiffs 920 shares, the remainder; that J. B. York was president of the company, and Robert York was treasurer and manager. Plaintiffs further allege various acts of mismanagement and misconduct on the part of the Yorks, causing a loss in two years of not less than $200,000 and a loss to the plaintiffs and a profit to themselves and to corporations in which they were interested and controlled; and that they had failed to make a distribution of the net profits of the company according to its by-laws; and asked, among other things, that a receiver "be appointed to take charge of and wind up the affairs of the company, and that on a final hearing a judgment be rendered against the Yorks and in favor of the company for such sums as the account of a master may show to be due by them to it."

The defendants answered the allegations of plaintiffs. In pursuance of the prayer of plaintiffs, J. B. York and John F. Rutherford were appointed receivers, and as such took charge and control of the property of the company.

On the second day of January, 1908, the plaintiffs presented an application to the chancellor of the Jefferson Chancery Court, in which they alleged "that on the 2d day of January, 1908, about 5. P. M. they were served (with) a notice, signed by J. B. York, * * * that there would be a meeting of the stockholders of said company * * * held at the office of Rose, Hemingway, Cantrell & Loughborough, in the city of Little Rock, Pulaski County, Arkansas, on the following morning at 10 A. M., the purpose of said meeting not being stated in said notice, except that it should be for the transaction of any business that may be presented to the stockholders for consideration;" "that a like notice

was, at the same time, served upon plaintiffs for a meeting of the directors of said company to be held at the same time and place;" that they are advised that the purpose of said meeting was to take some action hurtful to their interest and said corporation, with the object of hampering and interfering with the court in the administration of its affairs; and asked that the chancellor make an order "restraining said J. B. York, Robert York, C. J. Samstag and C. L. Browning, or any person or persons attempting to vote stock as a stockholder or as proxy for a stockholder of the Bluff City Lumber Company, and all directors, from holding or attempting to hold any meeting and from attending any meeting to be held in pursuance of the notices aforesaid, or either of them, and any other meeting of the stockholders or directors of the said corporation, until the further orders of this court."

Upon this application an order was made in accordance with the prayer thereof, and was served upon the Yorks on the morning of January 3, 1908. And on January 6, 1908, at 11 o'clock, the following citation was served upon each of the Yorks: "You are commanded to appear before the Jefferson Chancery Court at the courthouse in Pine Bluff, Arkansas, on Monday, January 6, 1908, at two o'clock, P. M. there to show cause why you should not be punished for contempt for refusing to obey an injunction against you issued by this court, dated January 2, 1908."

[Signed] "John M. Elliott,
"Judge of the Jefferson Chancery Court."

No affidavit, information, or statement of facts was presented to the court as a foundation for the issuance of the citations or proceedings for contempt. At two o'clock P. M. on the sixth day of January, 1908, J. B. and Robert York appeared before the court to answer the citations served on them, and asked for time to file a written response and to prepare their defense, and the court denied the time and proceeded to take testimony as to the contempt charged, and after hearing the evidence found both of the defendants guilty, and assessed the punishment of J. B. York at a fine of ten thousand dollars and of Robert York at a fine of five thousand dollars, and rendered judgments accordingly. To quash these judgments the petitions for the writ of certiorari are presented to this court.

In *Beene* v. *State, 22* Ark. 151, Chief Justice ENGLISH, after saying that it was held by this court "that an appeal could not be taken from, nor a writ of error prosecuted to, a judgment of the circuit court for contempt," said: "Yet if the court has acted beyond the scope of its constitutional or inherent power in punishing as contemptuous an act which is palpably not such, or has inflicted a mode or degree of punishment not warranted by law, or *has proceeded irregularly in the exercise of its legitimate power,* doubtless the party aggrieved may procure the judgment to be quashed on certiorari." Ex parte *Davies, 73* Ark. 358.

As to the mode of procedure in cases of contempt not committed in the immediate view or presence of the court, the authorities are well agreed that the contempt must be brought before the court by affidavit of the persons who witnessed it, or who have knowledge of it. In *State* v. *Henthorn,* (Kan.) 26 Pac. Rep. 937, the court truly said: "And a careful examination of the authorities satisfies us that, in all cases of constructive contempt, whether the process of arrest issues in the first instance, or a rule to show cause is served, a preliminary affidavit or information must be filed in the court before the process can issue. This is necessary to bring the matter to the attention of the court, since the court cannot take judicial notice of an offense committed out of court, and beyond its power of observation. There are a few cases in the books where the courts have taken notice of constructive contempts, and issued process, without any affidavit or information having been filed to bring the subject-matter of the contempt to the attention of the court. But such cases are very rare in this country, and the practice is nearly or quite obsolete. The great weight of authority is certainly opposed to such practice." *Hutton* v. *Superior Court,* (Cal.), 81 Pac. Rep. 409; *Otis* v. *Superior Court of Los Angeles County* (Cal.), 82 Pac. Rep. 853; Ex parte *Wright,* 65 Ind. 504, 508; In re *Wood* (Mich.), 45 N. W. Rep. 1113, 1116; *State* v. *Blackwell,* 10 So. Car. 35, 38; 4 Blackstone, Com. 286, 287; 9 Cyclopedia of Law of Procedure, 38, and cases cited; 4 Encyclopedia of Pleading and Practice, 779, and cases cited.

In harmony with the foregoing authorities section 3989 of Kirby's Digest provides: "Disobedience of an injunction may

be punished by the court, or by the judge thereof, or any circuit judge in vacation, as a contempt. An attachment may be issued by the court or judge, upon the production of evidence by affi-. davit of the breach of the injunction, against the party committing the same."

The chancery court erred in proceeding against the Yorks for constructive contempt without affidavit or its equivalent.

The two judgments for fines are quashed.