No. 27,062.

THE STATE OF KANSAS, *Appellee*, v. HARLON WAGONER, *Appellant*.

SYLLABUS BY THE COURT.

HOMICIDE—*Wounding Under Such Circumstances Death Would Result in Offense of Murder or Manslaughter—Instructions as to Control of Automobile Causing Injury.* The proceedings considered in a prosecution for wounding by operation of an automobile, under such circumstances the offense would have constituted murder or manslaughter if death had ensued, and *held,* the instructions did not properly present to the jury the substantive law of the case.

Appeal from Finney district court; CHARLES E. VANCE, judge. Opinion filed June 11, 1927. Reversed.

*F. Dumont Smith, Don Shaffer* and *Mabel Jones Shaffer,* all of Hutchinson, for the appellant.

*William A. Smith,* attorney-general, *Roland Boynton,* assistant attorney-general, and *A. M. Fleming,* county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Defendant appeals from conviction of the offense of maiming and wounding Oll Brown, the sheriff of Finney county, un-

Homicide, 30 C. J. p. 418 n. 8. Negligence, 29 Cyc. p. 542 n. 3. Process, 32 Cyc. p. 421 n. 2.

der such circumstances the offense would have constituted murder or manslaughter if death had ensued.

This is the concluding chapter of the story begun in the opinion in the case of *State v. Wagoner* (post, p. 591).

Defendant and Higgins were jointly charged with assault with intent to kill the sheriff by intentionally and maliciously operating the Marmon roadster in such a manner that it constituted a force likely to produce death or great bodily harm. Higgins was convicted at a separate trial and, pursuant to sentence, was confined in the penitentiary. At the subsequent trial of defendant, the sheriff and his deputy testified to what occurred at the crossroads, to their pursuit of the Marmon roadster, to what they saw when they came over the hill and looked down in the bottom where the cane field lay, and to their finding and seizing of fifteen cans of alcohol. The deputy sheriff testified he had seen defendant in Garden City, driving the Marmon roadster. The remainder of the evidence introduced in the liquor case against defendant was not presented, and the play was a one-act piece of three scenes—one at the crossroads, one at the cane field, and the final one in which the sheriff was wounded. The state produced Higgins as its witness. He relieved defendant of responsibility for the liquor and its transportation, defendant did not testify, and the facts and circumstances which in the liquor case served to illuminate defendant's association with Higgins, were not disclosed.

When defendant ran from the cane shock to the Marmon roadster, and the roadster was driven away by Higgins, the sheriff and his deputy were not close enough to command defendant to stop. When the officers left the cane field, they went west and then south to the paved highway, and then proceeded westward toward Garden City on the paved highway. After they had gone two or three miles, they saw the Marmon roadster approaching from the west. The officers stopped the Ford sedan at the side of the road, and alighted from it. The deputy went behind the sedan, and the sheriff walked toward the approaching roadster. When the roadster was about a quarter of a mile from him, the sheriff began signaling that it should be stopped. He thought it would be stopped, but it was not, and when it was from 100 to 150 yards away, he pointed his pistol toward it. When the roadster was probably 35 yards from him, it was approaching at a rate of from 50 to 60 miles per hour, and was headed

directly toward him. He leaped to one side, but was struck by the car and severely injured.

The sheriff and his deputy testified that Higgins was driving the roadster when it struck the sheriff. The state created confusion in its own testimony on the subject, but the officers doubtless knew their men, and in any event it was necessary that the jury should be instructed on the theory defendant was not driving the roadster. The officers had no warrant for the arrest of defendant or Higgins, or for seizure of the car, but had information that defendant and Higgins were "peddling booze."

The statute under which the information was drawn reads as follows:

"Every person who shall, on purpose and of malice aforethought, shoot at or stab another, or assault or beat another, or assault or beat another with a deadly weapon, or by any other means or force likely to produce death or great bodily harm, with intent to kill, maim, ravish or rob such person, or in the attempt to commit any burglary or other felony, or in resisting the execution of legal process, shall be punished by confinement and hard labor for a term not exceeding ten years." (R. S. 21-431.)

The statute under which defendant was convicted reads as follows:

"If any person shall be maimed, wounded, or disfigured, or receive great bodily harm, or his life be endangered by the act, procurement, or culpable negligence of another, in cases and under circumstances which would constitute murder or manslaughter if death had ensued, the person by whose act, procurement or negligence such injury or danger of life shall be occasioned shall, in cases not otherwise provided for, be punished by confinement and hard labor not exceeding five years, or in a county jail not less than six months." (R. S. 21-435.)

The information did not charge the offense was committed in resisting execution of lawful process, and it was not committed in resisting execution of lawful process. Process, as used in R. S. 21-431, means a warrant, writ, order, mandate, or other formal writing, issued by some court, body, or official having authority to issue process, and legal process means process not merely fair on its face, but in fact valid. (Alderson Judicial Writs and Process, § 4, and note 1, p. 11; Black's Law Dictionary, pp. 948, 949; *State v. Harvester Co.*, 79 Kan. 371, 376, 99 Pac. 603; *McKenna v. Cooper*, 79 Kan. 847, 101 Pac. 662.)

So far as R. S. 21-435 relates to offenses described in R. S. 21-431, but committed without malice or unintentionally (*State v. McCul-*

*lough,* 96 Kan. 453, 455, 152 Pac. 766), it does not include wounding in resisting arrest without warrant. Doubtless R. S. 21-435 does cover wounding an officer making a lawful arrest without warrant, and the court instructed the jury on the theory the attempted arrest of defendant without a warrant was lawful, substantially as follows: If defendant and Higgins were jointly committing the offenses of possessing and transporting intoxicating liquor, were discovered by the sheriff, and knew the sheriff was pursuing them, it was their duty to surrender to him; and if to avoid arrest they projected the automobile against the sheriff, either intentionally or because of the high rate of speed at which it was driven, they would be guilty under R. S. 21-435. No complaint is made of this instruction.

Defendant was seen driving the car in Garden City. He drove it away from the crossroads. Higgins drove it away from the cane field and, according to the officers, he was driving when the sheriff was injured. There was no other evidence relating to ownership of the car. Higgins testified for the state that his occupation was bringing intoxicating liquor from the Mexican border to Kansas; that defendant was not his partner in any of the liquor transactions involved in the case, and that he exercised all the control over the liquor in the car. The sheriff and his deputy testified for the state that Higgins was driving the roadster when it struck the sheriff. With the evidence in this condition, defendant was entitled to an instruction on the law of the case, assuming the testimony of the state was true. No such instruction was given, and the instructions which were given, following the one referred to, did not give opportunity for fair consideration of the case on that theory.

While the court told the jury the conviction of Higgins was no defense to prosecution of Wagoner, that all persons are principals who act together, and that defendant would be guilty if he aided, abetted or encouraged commission of the crime, the court gave another instruction bearing on the subject of acting together, and encouragement of the person driving the car by the other occupant, which contained the only reference to defendant's not being in control of the car, and which was likely to mislead. The court instructed the jury that if, in attempting to escape from the sheriff, defendant and Higgins were acting jointly, and the driver of the car was for such purpose driving at a high rate of speed with the "encouragement

or consent" of the other occupant, and the other occupant made no effort to induce the driver to stop or reduce speed, defendant would be guilty under R. S. 21-435, even though he was not driving the car, and the sheriff's injuries were not intentionally inflicted. Under the evidence favorable to defendant, the acting together necessary to make him criminally responsible for the act or culpable negligence of Higgins in running down the sheriff, required that he should encourage, counsel, aid or abet Higgins. Negligence of Higgins was not imputable to defendant (*Clark v. Railroad Co.*, 115 Kan. 823, 224 Pac. 920), and mere consent and inaction on defendant's part with respect to Higgins' manner of driving were not enough. (*State v. Douglass*, 44 Kan. 618, 26 Pac. 476.)

In the controlling instructions, joint interest, joint action and acting together, were the dominant themes. The jury's minds were not allowed to rest on any lack of identity of interest or control as between defendant and Higgins, and it is not likely that, when the jury had been told "encouragement or consent" would render defendant guilty, they distinquished between that phrase and "encouraged by words or gestures," especially since there was no evidence of encouragement by words or gestures.

The judgment of the district court is reversed, and the cause is remanded for a new trial.

HUTCHISON, J., not sitting.