RAY, EX PARTE.

4-7815                                    192 S. W. 2d 225

Opinion delivered February 11, 1946.

*H. J. Denton*, for petitioner.

GRIFFIN SMITH, Chief Justice. O. H. and Minnie Ray were divorced on testimony supporting the husband's cross-complaint. An appeal from the decree reached this Court in 1936 and was disposed of April 27th. *Ray* v. *Ray*, 192 Ark. 660, 93 S. W. 2d 665. Result was that an award of $30 per month as alimony was reduced to $15, but each of two minor children was given $7.50 monthly maintenance. After the children became of age and were no longer living with their mother, the latter petitioned for an increased allowance. In October, 1942, she was decreed $25 per month. The former husband prosecuted an unsuccessful appeal. *Ray* v. *Ray*, 205 Ark. 765, 170 S. W. 2d 681.

Payments under the new order were made until 1945, but were omitted for May and June of that year. Information to this effect having come to the Chancellor's attention (no formal complaint appearing to have been

filed by Mrs. Ray), the Clerk was directed to issue a citation commanding Ray to appear and show cause why he should not be dealt with as for contempt. Through error the Clerk issued an ordinary summons, effect of which was to inform the defendant that he had been sued and that unless defense should be made within the time prescribed by law allegations of the complaint would be taken for confessed. The Sheriff's return shows the summons was served June 25, 1945.

When Ray called at the Clerk's office to procure a copy of the complaint, he was informed by the Clerk that no pleadings had been filed, but that he (the Clerk) had been directed by the Chancellor, who called by telephone, to issue the summons. In appellant's brief, testimony of the Clerk is quoted to the effect that Ray was told no pleadings had been filed, ". . . and that he was directed orally by the Chancellor to issue the summons." The Clerk, however, testified that he inadvertently violated the Court's instruction; so a fair inference arises that the nature of the proceeding was made known to Ray. This conclusion is strengthened by the fact that Ray went directly from the Clerk's office to see his attorney.

On July 10th Mrs. Ray petitioned the Court for further modification of the decree. This transaction is not involved in the instant controversy because Ray's conversations with the Clerk and with his attorney occurred before the petition was filed.

When Court convened at 10 o'clock the morning of July 16th, Ray appeared with his attorney and was informed by the Chancellor regarding the charges. His defense was that no citation had been served. This amounted to a challenge to jurisdiction. Ray was directed to appear at 1 o'clock the same day, and did so, but again protested for the same reason. Witnesses were heard, in consequence of which the respondent was ordered to pay the two twenty-five-dollar delinquencies on or before August 1, under penalty of contempt. The Sheriff was instructed, in the event of default, that Ray be taken into

custody and confined in jail "until such time as he makes the payments."

Did the Court have jurisdiction? In *Ex Parte Coulter,* 160 Ark. 550, 255 S. W. 15, it was held (quoting from *CarlLee* v. *State,* 102 Ark. 122, 143 S. W. 909) that the accused was entitled to be informed with reasonable certainty "of the facts constituting the offense, . . . and [be given an opportunity] to make defense thereto— his day in court . . . The statute [as to contempt] says only that [the accused] shall be notified . . . and have a reasonable opportunity to make his defense. There must be an accusation before the accused can be notified of it, and there is no reason why the Court in session cannot recite that the matter offending has come to its knowledge, setting it out in an order, and directing a citation thereon to show cause."

In another paragraph of the same opinion it is said (repeating) that there must first be an accusation in some form, made either by the judge himself or by someone in possession of the facts, sufficient to constitute a *prima facie* case."

It is definitely settled by our decisions and elsewhere that the Court wherein a contemnor is in default may initiate the process for adjudication. That is exactly what was done in the case at bar. The Chancellor had information that the payments had not been made. He directed the Clerk to issue citation and deliver it to the Sheriff for service. The Clerk apparently understood what the objective was, but erroneously assumed that a summons would suffice. If Ray had not appeared July 16th to dispute the Court's jurisdiction the result would be different. But he did respond, with his attorney, and the Chancellor told him what the complaint was. If at that time he had made reasonable representations that a tenable defense could not be established unless witnesses then not available should be procured, or if under his own testimony doubt had been cast upon deliberate contempt, the penalty now complained of would not be before us. Certainly, when told at 10 o'clock in the morning that the

hearing would proceed three hours later, Ray had ample time within which to state that he had a defense and to tell the Court what witnesses were needed. Having elected to rely upon the defense that there was no jurisdiction, and being wrong in that respect, it follows that the order must be affirmed.