Ralph HENDERSON, Sheriff, *v.*
Robert H. DUDLEY, Chancellor, et al

78-65                                    574 S.W. 2d 658

Opinion delivered December 18, 1978
(Division II)

698

*David Hodges* and *H. David Blair,* for petitioner.

*Gerald W. Carlyle,* for respondents.

JOHN A. FOGLEMAN, Justice. Jeanette Stone (now Cole) brought suit for divorce against Danny Stone in the Chancery Court of Jackson County. The decree rendered in that case required the payment of child support by Danny Stone. On December 7, 1977, Danny Stone was found to be in wilful contempt of the chancery court for failure to make the child support payments required of him. Upon this finding, the chancellor sentenced Stone to 40 days in jail, but directed that he be released during the day for employment purposes. A commitment was issued remanding Stone to the custody of the petitioner, Ralph Henderson, as Sheriff of Jackson County, pursuant to the chancellor's finding and sentence. On February 22, 1978, Mrs. Cole filed a verified petition for citation of both Stone and Henderson for contempt of court, alleging that Stone had failed to pay child support as directed and had failed to submit himself to the Sheriff of Jackson County at night during the 40-day sentence and that Henderson had ignored the court's order and allowed Stone to be free from custody during the nighttime from about December 8, 1977 until January 16, 1978. She further alleged that Henderson had personal knowledge that Stone was not only being allowed to stay at home at night, but during the daytime when he was not employed and that Stone was drinking alcoholic beverages at the Glaze Restaurant. This petition was presented to Chancellor Robert H. Dudley, the presiding judge of the Chancery Court of Jackson County, in vacation, at Pocahontas, on February 22, 1978, without notice to Henderson and without any process having been served on him. The chancellor, without hearing any evidence, issued an order directing Henderson to appear in the Chancery Court of Jackson County, on the 13th day of March, 1978, at 10:00 a.m. to "show cause, if any, why he

should not be held in contempt of this court for his failure and refusal to comply and obey the court's orders . . . . " Petitioner filed a special appearance on March 13, 1978, challenging the jurisdiction of the court by motion to quash the order to show cause. When the chancery court denied this challenge, petitioner sought to overturn the chancellor's ruling by petitioning this court for writs of prohibition, mandamus and certiorari, alleging that the chancery court was acting in excess of its jurisdiction. We find that petitioner is not entitled to any of the writs sought and dismiss his petition.

The first contention made by petitioner is that the alleged contempt was constructive, not having been committed in the presence of the court, and that a proceeding to punish for such a contempt must be initiated by an affidavit of a person or persons who witnessed the contemptuous conduct or otherwise have knowledge of it. He argues that there was no preliminary affidavit or information filed to bring the subject matter of this alleged contempt to the attention of the trial court in this proceeding and that, as a result, the chancery court had no jurisdiction to issue the order to show cause. Petitioner relies upon *York* v. *State,* 89 Ark. 72, 115 S.W. 948 and cases from other jurisdictions. Even if *York* is applicable, we do not agree that it mandates the result reached by petitioner. In *York,* no affidavit, information or statement of facts was presented to the court as a foundation for proceedings for contempt. We merely held that, in all cases of constructive contempt, i.e., contempt not committed in the immediate presence of the court, since the court could not take judicial notice of an offense committed outside its presence, it was necessary that the matter be brought to the attention of the court by a preliminary affidavit or information before an order to show cause or other process could be served. The judgments punishing the respondents there were quashed because the chancery court proceeded without any affidavit "or its equivalent."

We noted the holding in *York* in the later case of *CarlLee* v. *State,* 102 Ark. 122, 143 S.W. 909. There, the judgment punishing the alleged contemnor was quashed on certiorari by a court divided, not only on the necessity of an affidavit to initiate that proceeding, but on the grounds for quashing the

writ. The opinion, however, was authoritative as to "the power of the court to initiate the proceeding by an order first made of record, as stated therein or a statement of the facts entered of record and signed by the judge in vacation." In that respect we said:

> Under our system of procedure, the accused is entitled to be informed with reasonable certainty of the facts constituting the offense with which he is charged and an opportunity to make defense thereto — his day in court. The different kinds of procedure have been outlined for the punishment of other offenses, but the statute,[1] as to this one, says only that he shall be notified of the accusation and have a reasonable opportunity to make his defense.

> There must be an accusation before the accused can be notified of it, and there is no reason why the court in session cannot recite that the matter offending has come to its knowledge, setting it out in an order, and direct a citation thereon to show cause. This was done by the Supreme Court in the case of the *State* v. *Morrill,* [16 Ark. 384] and was as effectual notice of the charge or accusation as an affidavit or information would have been. The summons and warrant of arrest are but to notify and bring the accused into court to answer the charges there made against him and the citation in this case, although it contains the whole matter constituting the offense with which the petitioner was attempted to be charged, was not a charge of record for him to answer, or an accusation within the meaning of the statute, the notice having been issued in vacation, by authority of the clerk alone, so far as the record shows, there being no order of the court authorizing the issuance of the citation, and without an order of the court first made setting out the charge, or a statement thereof made of record and signed by the judge of the court in vacation. ***

---

[1] The statute referred to is now Ark. Stat. Ann. § 34-903 (Repl. 1962), which merely requires that, in cases of contempts not committed in the presence of the court, the party charged be notified of the accusation and have a reasonable time to make his defense. It is clear that there is no statutory requirement as to the form of the charge or the manner of its initiation.

Still later, we distinguished *York* on the basis that the statute on which that proceeding was based [Ark. Stat. Ann. § 32-401 (Repl. 1962)] related only to disobedience of injunctions and that in *CarlLee* the applicable statute was Ark. Stat. Ann. § 34-903. See *Hall* v. *State*, 237 Ark. 293, 372 S.W. 2d 603. In *Hall*, we held that *York* was not controlling. We also held that, as in *CarlLee*, compliance with § 34-903 was sufficient; that an attachment for disobedience of an order of the court could be issued without the affidavit of a third person setting out the facts; and that one charged with contempt for violation of a court order was not prejudiced when the alleged contemnor was informed of the basis of the charge in the attachment itself, was advised of the facts constituting the charge at the outset of the hearing and did not request a continuance. We supported the logicality of our position that a supporting affidavit was not required by quoting from *CarlLee*, as follows:

> "The spectacle of a court of record and general jurisdiction being without power to initiate a proceeding to punish for contempt * * * without an affidavit of some third person first made, setting out the charge, would be pitiful in the extreme, and was not contemplated by our statutes and under our Constitution. The court would thus be rendered impotent, powerless to protect its authority, and enforce its mandates and retain the respect and confidence of the people, for whose benefit it was organized and exists, except by the grace of some third person."

We had, prior to the decision in *Hall*, expressly recognized the power of a chancellor to initiate the process for adjudication of contempt for failure to comply with orders of the court by issuing a citation upon information coming to its attention, without any formal complaint having been filed. *Ray, Ex parte*, 209 Ark. 739, 192 S.W. 2d 225; *Turk & Wallen* v. *State*, 123 Ark. 341, 185 S.W. 472. See also, *Ex parte Coulter*, 160 Ark. 550, 255 S.W. 15.

Thus, it can be seen that this court has taken the position that an order of court setting out the charge, or a statement thereof, containing the whole matter constituting the offense with which the alleged contemnor is charged, is the

equivalent of a supporting affidavit. It was made quite clear in *Spight* v. *State*, 155 Ark. 26, 243 S.W. 860, that, upon the authority of *CarlLee*, a charge of contempt for disobedience of process may be initiated by the court without the aid of an affidavit. Although, in this case, we need not go so far as to say that the order to show cause, in and of itself, was sufficient to meet the requirements for a proper charge, the pertinent parts of it do state such a charge, viz:

## ORDER

On verified Petition of the petitioner, Jeanette Stone Cole, alleging the following:

(1) That the defendant, Danny Stone, has failed and refused to comply with the Court's Order rendered herein on December 7th, 1977, more particularly to-wit:

(a) by his failure to pay child support since the rendition of the Judgment and Commitment on December 7th, 1977; and

(b) his failure to submit himself to the custody of the Sheriff of Jackson County, Arkansas, during the nighttime and to only be released for employment purposes during his forty (40) day jail sentence.

(2) The defendant, Ralph Henderson, Sheriff of Jackson County, Arkansas, has failed and refused to comply with the Court's Order rendered herein on December 7th, 1977, more particularly, to-wit:

"IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED

by the Court that the Defendant be remanded into the custody of the Sheriff of Jackson County, Arkansas, and to be by him safely confined in the Jackson County Jail, Newport, Jackson County, Arkansas, for forty (40) days, however, the defendant is to be released during the daytime for employment purposes."

\*\*\*

(4) The defendant, Ralph Henderson, Sheriff of

Jackson County, Arkansas, is hereby ordered and directed to appear in this Court on the 13th day of March, 1978, at 10:00 A.M. to show cause, if any, why he should not be held in contempt of this Court for his failure and refusal to comply and obey the Court's orders hereinabove mentioned; and further to show cause, if any, why he should not be required to pay a reasonable sum as costs and attorney's fees for this particular litigation.

Although the order in this case, like the attachment in *Hall,* did not recite the specific facts on which the charge was based, the order did refer to the verified petition of Mrs. Cole, which did recite facts to the extent necessary to give petitioner adequate notice of the charge. Petitioner claims that the verification of this petition is inadequate because it was "to the best of her knowledge and belief." In this case, where no affidavit was actually required, this verification is adequate and we reject the argument that a statement upon information and belief deprives the court of jurisdiction in a case where no affidavit is required.

Petitioner argues, however, that the petition did not state sufficient conduct on his part to constitute contempt, in that it is not alleged that he was served with the order, or that he wilfully or contumaciously violated the order, and that there is no statement of facts from which the essential elements of contempt could be rationally inferred. We disagree.

It is quite true that one, not a party to an action, who has not been served with an order, or who has no *notice* of it, and is not aware of its full import, cannot be held in contempt of the order. *Whorton* v. *Gaspard,* 240 Ark. 325, 399 S.W. 2d 680. We might well agree with petitioner if we were reviewing a holding that he was in contempt without any basis for finding that he had notice of the order or was aware of its full import. But we are simply reviewing the action of the trial court in denying a motion to quash the order to show cause on petitioner's application for extraordinary writs and we will not entertain any factual questions that may arise. *Jackson* v. *Smith,* 236 Ark. 419, 366 S.W. 2d 278; *Little Rock Distributing Co.* v.

*Ouachita County Circuit Court,* 259 Ark. 24, 531 S.W. 2d 33; *Patrick* v. *Wood,* 243 Ark. 418, 420 S.W. 2d 92; *Rastle* v. *Marion County Rural School District No. 1,* 260 Ark. 740, 543 S.W. 2d 923; *Massey* v. *Enfield,* 259 Ark. 85, 531 S.W. 2d 706; *State* v. *Nelson,* 246 Ark. 210, 438 S.W. 2d 33. Petitioner is not clearly entitled to the relief he seeks on these grounds, and in such cases these extraordinary writs are not granted. *Karraz* v. *Taylor,* 259 Ark. 699, 535 S.W. 2d 840; *Girley* v. *Wood,* 258 Ark. 408, 525 S.W. 2d 454; *McAllister* v. *McAllister,* 200 Ark. 171, 138 S.W. 2d 1040. Furthermore, we are most reluctant to use mandamus to control, direct or correct the action of trial courts in interlocutory proceedings. *Girley* v. *Wood,* supra.

Insofar as the issues before us are concerned, the record is certainly adequate to require petitioner to show that he had no notice of the order and was not aware of its import. The record discloses that the chancellor issued a commitment in this case on the same day he found Stone in contempt, which insofar as pertinent here said:

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Court that the defendant be remanded into the custody of the Sheriff of Jackson County, Arkansas, and to be by him safely confined in the Jackson County Jail, Newport, Jackson County, Arkansas, for forty (40) days, however, the defendant is to be released during the daytime for employment purposes.

Among the duties of a sheriff are the execution of process directed to him by legal authority, attendance upon all courts held in his county and the performance of all acts required of him by law. Ark. Stat. Ann. § 17-3601 (5) (Supp. 1977). Among the duties enjoined upon him by statute are the care, rule and charge of the county jail and all prisoners committed in his county. Ark. Stat. Ann. § 46-402 (Repl. 1977). Refusal to receive into the jail a person committed by lawful process is a misdemeanor which subjects the keeper of the jail to dismissal from office. Ark. Stat. Ann. § 41-2851 (Repl. 1977). Recklessly permitting one detained in custody to escape is also a misdemeanor. Ark. Sat. Ann. § 41-2814 (Repl. 1977).

It is also the statutory duty of the sheriff to attend at the clerk's office in his county daily to receive any process issued. Ark. Stat. Ann. § 27-320 (Repl. 1962).

The duty of a sheriff with respect to confinement of a prisoner lawfully committed to his custody has been treated by us in *Houpt* v. *State,* 100 Ark. 409, 140 S.W. 294, Ann. Cas. 1913c 690, viz:

> An escape in law has two separate meanings. The one involves the act of the prisoner, the other the act of the officer having him in custody. When the prisoner goes away from his place of lawful custody, the escape is the act of the prisoner; when the prisoner is allowed to leave his place of confinement, either negligently or voluntarily, by the officer having him in custody, the escape is the act of the officer. But in either event whether a person under lawful arrest and restrained of his liberty evades such arrest and restraint, either through his own act or by sufferance of the officer and goes at large before delivered by due course of law, an escape is committed. It is the duty of a sheriff to keep in custody a prisoner lawfully committed to him. The custody means keeping him either in actual confinement in jail or surrounded by physical force sufficient to restrain the prisoner from going at large or obtaining more liberty than the law allows. The jail, with its walls, may constitute the place of confinement, or the physical force thrown about the prisoner outside of the jail may constitute the legal custody; but, when such physical force is removed, it results in an escape. As is said in the case of *Wilkes* v. *Slaughter,* 3 Hawkes (N.C.) 211, "No moral obligation can be received as a substitute for it, although promises may be made and may be observed to remain in close jail, the moment compulsion and force are withdrawn, there is no legal custody, the prisoner becomes a free agent, there is no longer an imprisonment." In the case of *Richardson* v. *Rittenhouse,* 40 N.J. Law, 230, it was held that it was voluntary escape to allow a person arrested to go at large upon his promise to appear the next day and give bail, even though he voluntarily surrendered himself in the terms of the promise. In the case of *Nall* v.

*State,* 34 Ala. 262, it was held that where a sheriff discharged his duties so negligently that a prisoner in consequence left the jail and went to the adjacent town, even though for a few moments, and actually returned, it was an escape. In the case of *Lynch v. Com* (Ky.) 73 S.W. 745, it was held that when a prisoner was permitted to go to his home every Saturday night it constituted an escape. In *Luckey v. State,* 14 Tex. 400, it was held that when a convict committed to prison was permitted by the sheriff to go at large, he was liable for escape. 1 Hale, P.C. 596; 2 Bishop, New Cr. Law, § 1065. In 16 Cyc. 538, an escape is defined to be "the loss before discharge by due process of law of the lawful custody of a prisoner, whether voluntarily or negligently suffered." In order to constitute custody, there must be the presence of physical restraint or physical control; and when such restraint or control is lost, there is a loss of custody, even though it may continue only temporarily. Murfree on Sheriffs, §§ 193 and 1166.

As is said in the case of *Beard v. State,* 79 Ark. 293, "the law does not recognize any other method of holding a prisoner in custody charged with crime than by confinement in jail until examination or trial." If exceptional cases shall arise when he must of necessity be taken from jail temporarily, then he must be actually guarded and surrounded by such physical force as will not only deprive him of liberty but restrain him from any free movement of going withersoever he may will.

See also, Annot., Ann. Cas. 1913c 694.

Our statute defines "process" as "a writ or summons issued in the course of judicial proceedings." Ark. Stat. Ann. § 27-128 (Repl. 1962). A writ is defined as an order or precept in writing, issued by a court, clerk or judicial officer. Ark. Stat. Ann. § 27-129 (Repl. 1962). Process, in the sense of the statutes, is a comprehensive term which includes all writs, rules, orders, executions, warrants or mandates issued during the progress of an action, even those used to carry a judgment into effect, including a commitment to prison for a criminal offense or for contempt. *People v. Nevins,* 1 Hill (N.Y.) 154

(1841); *Graber* v. *Graber*, 93 F.S. 281 (D.C., 1950); *Victoria* v. *Young*, 80 Nev. 279, 392 P. 2d 509 (1964); *U.S.* v. *Noah*, 27 Fed. Cases 176 (S.D. N.Y. 1825); *U.S.* v. *Hoffman*, 13 F. 2d 269 (N.D. Ill., 1925), aff'd. 13 F. 2d 278, 280 (7 Cir., 1926); *National Fire Ins. Co. of Hartford* v. *Chambers*, 53 N.J. Eq. 468, 32 A. 663 (1895); *State* v. *Wagoner*, 123 Kan. 586, 256 P. 959 (1927); *Riley* v. *Whittiker*, 49 N.H. 145, 6 Am. Rep. 474 (1869). See also, Process (Practice), Black's Law Dictionary (DeLuxe 4th Ed.) p. 1370. It has been said to include every description of process that can come into the hands of a sheriff to be executed. *Harman* v. *Childress*, 11 Tenn. (3 Yerg.) 327.

Our statutes specifically authorize courts to punish wilful disobedience of their process or orders [Ark. Stat. Ann. § 34-901 (Repl. 1962)]; however, the chancery court was proceeding under its inherent powers and we will deal with this case accordingly. In any event, the disobedience of any valid judgment, order or decree of a court having jurisdiction to enter it is such an interference with the administration of justice as to constitute contempt. *State* v. *Koon*, 356 Mo. 284, 201 S.W. 2d 446 (1947). Punishment for such contempt is an inherent power of the court. *Lane* v. *Alexander*, 168 Ark. 700, 271 S.W. 710; *Meeks* v. *State*, 80 Ark. 579, 98 S.W. 378; *State* v. *Dowdy*, 86 Ark. 140, 109 S.W. 1175; *Guyot* v. *State*, 222 Ark. 275, 258 S.W. 2d 569; *Hands* v. *Haughland*, 87 Ark. 105, 112 S.W. 184. The portion of the commitment order of the court directing that the defendant "be remanded into the custody of the Sheriff of Jackson County, Arkansas, and to be by him safely confined in the Jackson County Jail . . . . for forty (40) days, however, the defendant is to be released during the daytime for employment purposes" certainly constitutes process of the court. See, *Williams* v. *Hempstead County*, 39 Ark. 176.

The sheriff is an officer of the court[2] for the purpose of carrying into execution sentences imposed by the court and is subject to attachment for contempt if he departs therefrom, without legal excuse therefor. *Re Birdsong*, 39 F. 599, 4 LRA 628 (1889); *U.S.* v. *Hoffman*, supra; *Fanning* v. *U.S.*, 72 F. 2d

---

[2]The status of the sheriff as an officer of the courts in his county seems to be beyond doubt. He has been called the executive arm of the court. *Merrill* v. *Phelps*, 52 Ariz. 526, 84 P. 2d 74 (1938).

929 (4 Cir., 1934); *State ex rel Murphy* v. *Superior Court*, 30 Ariz. 332, 246 P. 1033, 47 ALR 401 (1926); *Ridgway* v. *Superior Court*, 74 Ariz. 117, 245 P. 2d 268 (1952). As an officer of the court it is his duty to obey its orders and his failure to do so is punishable as contempt of the court. *State* v. *Leavitt*, 271 S.W. 2d 63 (Mo., 1954). The disobedience or disregard of an order of commitment or confinement by a court of competent jurisdiction is a contempt of that court. *Fanning* v. *U.S.*, supra; *U.S.* v. *Hoffman*, supra; *Robran* v. *People*, 173 Colo. 378, 479 P. 2d 976 (1971); *Fiorini* v. *Fiorini*, 122 Misc. Rep. 325, 203 N.Y.S. 785 (1924); *Ex parte Shores*, 195 F. 627 (N.D. Iowa, 1912).

There is a division of authority upon the question of the status of the keeper of a state prison as an officer of the court and it is held, in some cases, that he is not and consequently he cannot be held in contempt of the committing court for improper release of one committed. See e.g., *People* v. *District Court*, 89 Colo. 78, 299 P. 1 (1931). But the status of the sheriff as an officer of the chancery court is beyond doubt. Ark. Stat. Ann. § 17-3601 (5); *In re Lawson,* 3 Ark. 363. Certainly it is essential that a court in which a sentence is imposed for contempt be in a position to see that its sentence is made effective. The language of the U.S. Circuit Court of Appeals for the Fourth Circuit in *Fanning* v. *U.S.,* supra, is appropriate here, in spite of the fact that the sentence there was not for contempt. That court said:

> The right of a court to have the sentences imposed by it executed is inherent and is necessary to the administration of justice. Without this right and without the power to punish, and have the punishment carried out, courts would be impotent and could not function. ***

Just as appropriately, the United States Supreme Court in *Wood* v. *Georgia,* 370 U.S. 375, 82 S. Ct. 1364, 8 L. Ed. 2d 569 (1962), said:

> We start with the premise that the right of courts to conduct their business in an untrammeled way lies at the foundation of our system of government and that courts necessarily must possess the means of punishing

for contempt when conduct tends directly to prevent the discharge of their functions. ***

If the sheriff did permit Stone to go at large as alleged in Mrs. Cole's petition, there was certainly a basis for a finding of contempt. The order to show cause refers to the verified petition of Mrs. Cole. That petition, beyond doubt, alleges facts constituting contempt of court. *Ex parte Shores,* supra; *Swepston* v. *U.S.,* 251 F. 205 (6 Cir., 1918); *In re O'Rourke,* 251 F. 768 (D.C. Mont., 1918); *People* v. *Court of Oyer & Terminer,* 10 App. Div. 25, 41 N.Y.S. 702 (1896). The fact that the actions on which the charge is based may constitute a criminal offense does not affect the jurisdiction of the court to punish the offender for contempt. *Guyot* v. *State,* supra. This commitment was certainly process of the court, the disobedience of which by actions of the sheriff of the type alleged in the petition would constitute contempt of the court. *U.S.* v. *Hoffman,* supra; *Robran* v. *People,* supra. See also, *People* v. *Solomon,* 150 Misc. 873, 271 N.Y.S. 136 (1934).

Petitioner also contends that the order to show cause was void because the chancellor, while sitting in Pocahontas, which is outside the county (Jackson) in which the cause was pending, issued it upon the ex parte application of Mrs. Cole. Prior to the adoption of Ark. Stat. Ann. § 22-407.1 (Repl. 1962) there probably would have been merit in that contention. See *Roberts* v. *Tatum,* 171 Ark. 148, 283 S.W. 45. But under the cited section, the chancellor had the authority, while physically present in the geographical area he serves as chancellor, to render any appropriate order with respect to any cause or matter pending in any chancery court over which he presides, subject to such notice of the time, place and nature of the hearing as may be required by law or rule or order of the court. We take judicial notice that Robert H. Dudley, the chancellor who issued the order, is the chancellor of the Eighth Chancery Circuit, that Pocahontas is in the geographical area of that circuit and that the Chancery Court of Jackson County, in which this matter is pending, is a chancery court over which he presides. We know of no rule or order of the chancery court pertaining to such matters. No such rule or order has been filed in the office of the clerk of this court. Petitioner contends that he was entitled to notice.

It is quite true that he is entitled to notice of a hearing on the order to show cause. There is no statute requiring that the alleged contemnor be given notice prior to the issuance of an order to show cause, which is simply an accusation. The only statutory requirement is that the alleged contemnor have notice of the accusation and have a reasonable time to make his defense. Ark. Stat. Ann. § 34-903. The chancery court was not proceeding under the statute, but under its inherent powers. See *Weldon v. State,* 150 Ark. 407, 234 S.W. 466; *Freeman v. State,* 188 Ark. 1058, 69 S.W. 2d 267; *Rimmer v. Rimmer,* 229 Ark. 1016, 320 S.W. 2d 92. Even so, petitioner was entitled to written notice of the accusation, and a reasonable opportunity to defend. *Phillipe v. Window Glass Cutters League of America,* 99 F.S. 369 (W.D. Ark., 1951). The order to show cause constituted sufficient notice of the accusation. See *Roberts v. Tatum,* supra; *Hall v. State,* 237 Ark. 293, 372 S.W. 2d 603; *Poindexter v. State,* 109 Ark. 179, 159 S.W. 197, 46 LRA (n.s.) 517; *Pate v. Toler,* 190 Ark. 465, 79 S.W. 2d 444.

Petitioner also contends that, not being a party to the original action, he was a stranger to the order of commitment and cannot be punished for contempt. Of course, one can be punished for disobedience of an order of the court in an action in which he is not a party if he has notice of the order. See *Dennison v. Mobley,* 257 Ark. 216, 515 S.W. 2d 215; *Whorton v. Gaspard,* 240 Ark. 325, 399 S.W. 2d 680. If petitioner was properly performing his duties as an officer of the court, it is difficult to see how he could have failed to have notice of the order committing Stone.

Petitioner also argues that the order of commitment was too vague as to his duties with reference to release of Stone in the daytime and with respect to his duty upon Stone's failure to return to the jail in the evening. This was not a matter for consideration on a motion to quash for want of jurisdiction and is not for consideration on a challenge here to the jurisdiction of the chancery court. Furthermore, this contention was not one of the grounds on which the motion to quash was based. The merits of this contention are appropriate for consideration upon a hearing on the order to show cause.

Petitioner also asserts that the proceeding in the trial court was, in effect, mandamus to compel the performance of

a duty. Obviously, there is no merit to this argument. The proceeding was one to punish petitioner for failure to perform a duty, not to compel its performance.

The petition for writs of prohibition, mandamus and certiorari is denied and the temporary writ of prohibition heretofore issued is dissolved.

We agree. HARRIS, C.J., and HICKMAN, J.

Mr. Justice Byrd concurs in the result only.

HOWARD, J., dissents.

GEORGE HOWARD, JR., Justice, dissenting. I dissent in the disposition taken by the majority on petitioner's request for writ of prohibition, or, in the alternative, mandamus or certiorari, to the Chancery Court of Jackson County.

The fundamental issue involved in this case is not, as perceived by the majority, whether the trial court has inherent power to cite an officer of the court for contempt for the disobedience of its process, nor is it whether a court may initiate contempt proceedings on its own motion, but, on the contrary, the issue is whether a criminal contempt proceeding may be initiated by a private litigant in his civil action pending before the court whose order has been purportedly ignored or disregarded by a party who is not a party to the pending action and where such alleged disobedience occurred out of the presence of the court.

It is generally recognized that civil contempt proceedings should be instituted by an aggrieved party who has a pecuniary interest in the right to be protected, while criminal contempt proceedings are initiated by the court or the office of the prosecuting attorney, at the request of the court, for, indeed, the state is the real party in interest, and consequently, is a proper party to the proceeding. I submit that, indeed, in situations as we have, in the instant case, where a husband and wife are antagonists, in a support proceeding where emotions and attitudes are highly charged, and a third party, the Sheriff of Jackson County — Chief Law Enforcement Officer of the county, is caught in the middle, a disinterested

source should be called upon by the trial court to initiate and prosecute the proceedings.[1]

It is clear from this record that even the trial judge had certain misgivings about the contempt proceedings initiated by Mrs. Stone against the sheriff in her civil action for the trial court, in its order of March 13, 1978, made the following observation:

> "(10) The Court hereby orders the cause inviting Danny Stone and Ralph Henderson [Jackson County Sheriff] shall be separated and that *henceforth there shall be two separate files maintained with a complete file in each cause and henceforth, the matter involving Ralph Henderson shall be referred to as Ex Parte, Ralph Henderson.* (Emphasis Added)

> "(11) The Court finds that the better practice would have been to obtain separate affidavits in the cause involving Danny Stone and Ralph Henderson."

However, after making the above finding, the court went on to further state: "The Court rejects the argument Ralph Henderson cannot be brought as a party in a civil contempt proceeding between a husband and a wife." I submit, if this is true, why did the court suggest and even order that a separate file be opened and maintained for the sheriff? It is apparent that the trial court is caught in the midst of an antinomy. It is clear that the citation against Danny Stone is for civil contempt, while the citation against the Sheriff of Jackson County is criminal.

The learned trial judge recognizing, as he must, the complications that were bound to develop in permitting the criminal contempt proceeding against the sheriff to be pursued in the wife's civil action, ordered the proceedings against the sheriff to be designated as *"Ex Parte, Ralph Henderson."* It is plain that in the criminal contempt proceeding, the sheriff is entitled to the presumption of innocence that is afforded every defendant in a criminal proceeding, while in a civil proceeding, this presumption is unavailable. Moreover, the

---

[1]One of the peculiarities of contempt proceedings is that the judge whose orders are disobeyed, or who is personally insulted by the defendant, may be the same judge who hears and decides the contempt charges. This may raise questions about the impartiality of the judge.

sheriff's guilt would have to be established by evidence beyond a reasonable doubt, while in a civil proceeding, the burden of proof is measured in terms of preponderance of the evidence.

I submit that although there are many cases in the Arkansas Reports, involving criminal contempt proceedings, designated or styled as *"Ex Parte"*, this is an inappropriate designation for a criminal contempt proceeding.

Black's Law Dictionary, Fourth Edition, and Bouvier's Law Dictionary, Third Revision, defines *"Ex Parte"*, in the context being used in this proceeding, as follows:

" *'Ex Parte'*, in the heading of a reported case, signifies that the name following is that of the party upon whose application the case is heard."

It is plain from this record that Sheriff Henderson did not petition the trial court for any relief, but, on the contrary, Mrs. Stone petitioned the court for an order and citation against him. Thus, the designation of the proceeding against the sheriff as "Ex Parte, Ralph Henderson", is a misnomer. The proceeding against the sheriff is an action by the state, and consequently, should have been styled *State of Arkansas* v. *Ralph Henderson.*[2]

Finally, inasmuch as Mrs. Stone sought, improperly however, to initiate both civil and criminal contempt proceedings in her civil action by filing a purported verified petition, which the trial court construed as an affidavit, there is no accusation, not even a *de facto* one, in the misnomer "Ex Parte, Ralph Henderson" proceeding, since the trial court may not take judicial notice of its own records in other causes therein, even between the same parties. *See: Lewis* v. *Lewis,* 255 Ark. 583, 502 S.W. 2d 505; *Murphy* v. *Citizens Bank of Junction City,* 82 Ark. 131, 100 S.W. 894.

I would, therefore, grant the requested relief.

---

[2]The following are a few of the many cases in the Arkansas Reports involving criminal contempt proceedings against individuals involving factual situations comparable to the one in the instant case: *York* v. *State,* 89 Ark. 72, *Bene* v. *State,* 22 Ark. 151, *CarlLee* v. *State,* 102 Ark. 122, *State* v. *Morrill,* 16 Ark. 386.